[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**January 20, 2004**
**THOMAS K. KAHN**
**CLERK**

_____

No. 03-10154
_____

D. C. Docket No. 01-00130-CV-2-WDO-5

HORTON HOMES, INC.,

Plaintiff-Counter-
Defendant-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Counter-
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(January 20, 2004)**

Before EDMONDSON, Chief Judge, BIRCH and FARRIS[*], Circuit Judges.

BIRCH, Circuit Judge:

_____

[*]Honorable Joseph Jerome Farris, United States Circuit Judge for the Ninth Circuit,
sitting by designation.

In this appeal we must decide whether Internal Revenue Code ("I.R.C.") § 4051(a)(1)(E),[1] 26 U.S.C. § 4051(a)(1)(E), clearly expresses the intent of Congress or is instead ambiguous, thereby allowing the Treasury Department ("Treasury") to promulgate regulations to eliminate any ambiguity. After review, we have decided that § 4051(a)(1)(E) is clear on its face and does not apply to the "toters"[2] used by plaintiff-appellant Horton Homes, Inc. ("Horton"). Accordingly, the judgment of the district court is REVERSED.

## I. BACKGROUND

Horton purchased certain vehicles, known as "toters," from LJL Truck Center ("LJL") used to transport manufactured homes from the plant where they are built to the retail dealer of the home. When purchased from LJL, the toters were not yet complete and, thus, were not yet capable of towing manufactured homes. In order to complete the toter, Kingsley-Fisher Industries ("Kingsley-Fisher") arranged with LJL and Horton to have the incomplete toters sent to yet another manufacturer, Double Eagle, for the installation of sleeper cabs and then

[1]Section 4051 imposes an excise tax "on the first retail sale" of, inter alia, "[t]ractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer." I.R.C. § 4051(a)(1)(E).

[2]A "toter" is a tractor-like vehicle specially designed to transport manufactured homes from the plant where they are built to the retail dealer of the home.

2

back to Kingsley-Fisher where the vehicles' assembly was completed. Kingsley-

Fisher installed several components to complete the finished product:

> a heavy duty vertical power hitch, coil spring boxes, a 200-gallon fuel
> tank, a "Wide Load" sign, a mirror and light bar, a spare tire rack,
> fenders, a lighting receptacle and a manual control box mounted on
> the dash or the window frame of the cab that could activate the lights
> and electromagnetic brakes on the manufactured home.

R2-68 at 2. After these improvements, the toters were capable of towing or pulling

a manufactured home, and they were delivered back to Horton.

Beginning in 1989 and continuing until 1995, the Internal Revenue Service

("IRS") assessed a 12% excise tax on Horton's toters. The IRS determined that the

toters fell within the definition of a "tractor" in I.R.C. § 4051(a)(1)(E). Since

1983,[3] this section has imposed a 12% tax "on the first retail sale"[4] of "[t]ractors of

the kind chiefly used for highway transportation in combination with a trailer or

semitrailer." 26 U.S.C. § 4051(a)(1)(E) (2003). From 1963 to 1982, the term

"tractor" was defined in Treasury Department regulations mirroring the language

---

[3]The language of current § 4051(a)(1)(E) was enacted originally as part of the Revenue Act of 1938 in 26 U.S.C. § 3403(a). See 26 U.S.C. § 3403(a) (1938). In 1954, the language in § 3403(a) was moved to § 4601(a). See 26 U.S.C. § 4601(a) (1954). Section 4061(a)(1)(E) was repealed in 1983 and its language was relocated in current § 4051(a)(1)(E), the only change being that a 10% tax was imposed on the "manufacturer, producer, or importer" under § 4061(a)(1) and a 12% tax was imposed on "the first retail sale" in § 4051(a)(1). 26 U.S.C. § 4051(a)(1)(E) (1983). The kinds of tractors subject to the tax in (a)(1)(E) have remained unchanged. See 26 U.S.C. § 4051(a)(1)(E) (2003).

[4]"First retail sale" is defined in section 4052 as "the first sale, for a purpose other than for resale or leasing in a long-term lease, after production, manufacture, or importation." 26 U.S.C. § 4052(a)(1) (2003).

of § 4051(a)(1)(E): "[t]he term 'tractor' means any tractor chiefly used for highway transportation in combination with a trailer or semitrailer." *Compare* 26 C.F.R. § 48.4061(a)-3(c) (1963), *with* 26 C.F.R. § 48.4061(a)-3(c) (1982). In 1983, however, the Treasury Department enacted new, temporary regulations expanding the definition of "tractor":

> [t]he term 'tractor' means a highway vehicle primarily designed to tow a vehicle, such as a trailer or semitrailer, but does not carry cargo on the same chassis as the engine. A vehicle equipped with air brakes and/or towing package will be presumed to be primarily designed as a tractor.[5]

26 C.F.R. § 145.4051-1(e)(1)(i) (1983). This regulation remains unchanged today. See 26 C.F.R. § 145.4051-1(e)(1)(i) (2003).

Following a non-jury trial, the district court ruled in findings of fact and conclusions of law that "[f]or Horton Homes' toters to be subject to the excise tax

---

[5]The regulation goes on to state that
(ii) An incomplete chassis cab shall be treated as a tractor if it is equipped with one or more of the following:
    (A) A device for supplying pressure from the chassis cab to the brake system (air or hydraulic) of the towed vehicle;
    (B) A mechanism for protecting the chassis cab brake system from the effects of a loss of pressure in the brake system of the towed vehicle;
    (C) A control linking the brake system of the chassis to the brake system of the towed vehicle;
    (D) A control in the cab for operating the towed vehicle's brakes independently of the chassis cab's brakes; or
    (E) Any other equipment designed to make it suitable for use as a tractor.
26 C.F.R. § 145.4051-1(e)(1)(ii)(A)-(E) (2003). Section (e)(2) defines "truck" as "a highway vehicle that is primarily designed to transport its load on the same chassis as the engine even if it is also equipped to tow a vehicle, such as a trailer or semitrailer." Id. § 145.4051-1(e)(2).

they must be 'tractors' and not 'trucks.'" R2-68 at 4. Under the current regulatory definition of "tractor," the district court held that Horton's toters fit within its language and were, thus, subject to the 12% tax. Horton appealed this judgment to us.

## II. DISCUSSION

We review an agency's interpretation of a federal statute by using the two-step process articulated by the Supreme Court in <u>Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.</u>, 467 U.S. 837, 104 S. Ct. 2778 (1984). <u>Southern Co. v. F.C.C.</u>, 293 F.3d 1338, 1343 (11th Cir. 2002). As we have stated,

> <u>Chevron</u>'s first step requires us to ascertain whether Congress has spoken unambiguously 'to the precise question at issue.' If the language of the statute is unambiguous, we go no further, for we must give effect to clear congressional intent. If, however, we determine that Congress's intent is ambiguous as to the question at issue, we must move on to the second step of the <u>Chevron</u> test and ask whether the agency's interpretation of congressional intent is reasonable.

<u>Id.</u> (citing <u>Chevron</u>, 467 U.S. at 842-43, 104 S. Ct. at 2781-82). Our first step, therefore, is to determine whether the language of § 4051(a)(1)(E) is clear or in need of agency interpretation. "[T]he starting point for interpreting a statute is the language of the statute itself." <u>Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108, 100 S. Ct. 2051, 2056 (1980). Moreover, "[a]s a basic rule of statutory interpretation, we read the statute using the normal meanings of its

5

words. . . . '[A]bsent a clearly expressed legislative intent to the contrary, that language is generally dispositive.'" Consolidated Bank, N.A. v. United States Dep't of Treasury, 118 F.3d 1461, 1463 (11th Cir. 1997) (quoting Gonzalez v. McNary, 980 F.2d 1418, 1420 (11th Cir.1993)).

Section 4051(a)(1)(E) clearly states the kinds of tractors that Congress has decided are subject to the 12% excise tax. Since 1938, when tractors first were subject to this tax, the kinds of tractors defined in § 4051(a)(1)(E) have not changed, even while Treasury regulations have been enacted modifying the definitions of "tractor" and "truck." See, e.g., 26 C.F.R. § 48.4061(a)-3(c) (2003); 26 C.F.R. § 145.4051-1(e)(1)(i) (2003). While perhaps the terms "tractor" and "truck" were in need of regulatory clarification, and we need not rule on that issue in this appeal, clarifying the definitions of those terms by way of regulation does not change the clear statutory language of § 4051(a)(1)(E).

Under the plain language of § 4051(a)(1)(E), only "[t]ractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer" are subject to the 12% tax. 26 U.S.C. § 4051(a)(1)(E). The IRS stated in its brief and admitted at oral argument before us that Horton's toters cannot tow trailers or semitrailers; rather, they are used *exclusively* for the transport of manufactured homes. Appellee's Br. at 18. Accordingly, Horton's toters cannot

6

be "[t]ractors *of the kind* chiefly used . . . *in combination with a trailer or semitrailer.*" 26 U.S.C. § 4051(a)(1)(E) (emphasis added).[6] Therefore, even though Horton's toters fall within the regulatory definition of "tractor," they do not fall within the plain statutory language dictating that only those tractors "*of the kind* chiefly used . . . in combination with a trailer or semitrailer" are subject to the tax. Id. (emphasis added).[7]

For the foregoing reasons, Horton's toters are not subject to the 12% excise tax levied under § 4051(a). Contrary to the district court's conclusion that to find Horton's "toters are not subject to the excise tax would be to elevate form over substance," R2-68 at 6, such a finding impermissibly would stretch the statutory

---

[6]Because Congress did not define "trailers or semitrailers," nor has the Treasury promulgated regulations defining those terms, we will define the words "trailer or semitrailer" according to their common meaning. Old Colony R.R. Co. v. Comm'r, 284 U.S. 552, 560, 52 S. Ct. 211, 213 (1932); Consolidated Bank, 118 F.3d at 1464. "[C]ourts often turn to dictionary definitions for guidance." CBS, Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1223 (11th Cir. 2001). Under the dictionary definition, both trailers and semitrailers are used for the purpose of hauling goods or freight. MERRIAM-WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002), available at http://mwu.eb.com/mwu. "Freight" is defined as "goods . . . loaded for transportation." Id. A "good" is defined as "personal property." Id. Manufactured homes are permanent dwellings, not personal property or freight. Accordingly, manufactured homes would not be used "in combination with a trailer or semitrailer." 26 U.S.C. § 4051(a)(1)(E).

[7]Because we hold that congressional intent is clear, we need not reach the second part of the Chevron test. Additionally, since we decide that Horton is not subject to the tax, we need not reach the merits of Horton's argument that LJL, rather than Horton, should be responsible for paying the tax.

meaning at issue here beyond the clearly expressed congressional intent in §
4051(a)(1)(E).

### III. CONCLUSION

We find that Horton's toters are not subject to the 12% excise tax levied in
I.R.C. § 4051 because the toters are not "[t]ractors of the kind chiefly used . . . in
combination with a trailer or semitrailer." 26 U.S.C. § 4051(a)(1)(E).
Accordingly, the judgment of the district court is REVERSED and this case is
REMANDED for further proceedings consistent with this opinion.