[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 17, 2004
THOMAS K. KAHN
CLERK

No. 03-14207

D. C. Docket No. 01-00955 CV-F-N

TRACY LYNN PENN,

Plaintiff-Appellant,

versus

CITY OF MONTGOMERY, ALABAMA,
GUINN R. TIMMERMAN, Police Officer, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

(August 17, 2004)

Before DUBINA, CARNES and CUDAHY*, Circuit Judges.

_____
*Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

DUBINA, Circuit Judge:

Appellant Tracy Lynn Penn ("Ms. Penn") appeals the district court's order granting summary judgment to Appellees City of Montgomery ("City"), Officer Guinn R. Timmerman ("Officer Timmerman"), and Officer Christopher Howard ("Officer Howard") on her 42 U.S.C. §§ 1983 and 1988 claims, pendent state law tort claims, and contract rescission claim. For the reasons that follow, we affirm.

## I. BACKGROUND

A. *Facts*

On September 18, 2000, Ms. Penn was involved in a verbal and physical altercation with her former husband, Walter Bradley Penn ("Mr. Penn"). According to Ms. Penn, on that day, she had left work early due to an illness. She called Mr. Penn to pick up their children from daycare, but he failed to do so. Instead, Ms. Penn's grandmother picked up the children, brought them home, and prepared dinner for them.

After the children had eaten, Ms. Penn put her youngest child, a son age three, into the bath tub. Her oldest child, a daughter age nine, was in the bathroom doing her homework. At this time, Mr. Penn called and Ms. Penn informed him that she no longer needed his assistance with the children. Mr. Penn became

2

angry. Soon thereafter, Ms. Penn heard banging on the door, but she did not answer the door. Ms. Penn then noticed that Mr. Penn was in the house. Mr. Penn was very angry and began yelling and hitting Ms. Penn. Ms. Penn got her son out of the bathroom and yelled at her daughter to call the police. Mr. Penn continued hitting Ms. Penn. At that point, Ms. Penn picked up an object which she thought was a mop and hit Mr. Penn. Ms. Penn hit Mr. Penn with her fist in his nose and mouth area, causing a bloody nose and cut lip. The oldest child screamed that she had called the police, and Mr. Penn attempted to leave the residence. Because the back door of the house was locked with dead bolt locks that required a key to unlock, Mr. Penn exited through a window in the back of the house.

Officers Timmerman and Howard responded to the child's call to the police. Upon their arrival, the Officers conducted an investigation of the scene. The Officers questioned Ms. Penn, Mr. Penn, and the daughter. The Officers received conflicting information regarding the events that had transpired. Specifically, the Officers received contradictory information regarding Mr. Penn's place of residence and the alleged lack of evidence to substantiate a forced entry. Ultimately, the Officers were unable to determine the primary aggressor. The Officers, however, believed that a crime had been committed and probable cause existed to make a dual arrest. Therefore, the Officers arrested Ms. and Mr. Penn

for domestic violence in the third degree.  The Officers transported Ms. Penn to the jail where she remained for several hours before being released on bond.

The day after her arrest, Ms. Penn consulted with the attorney who represented her in her divorce action.  This attorney recommended that she file a lawsuit against the City and the Officers involved in her arrest.  Shortly thereafter, Ms. Penn retained the services of another attorney, John Alley, Jr. ("Alley"), to represent her in the criminal proceedings relating to the domestic violence charge.  Before her April 2001 court date on the domestic violence charge, Ms. Penn met with Alley at least twice and consulted with him on the telephone two or three other times.  Alley explained the municipal proceedings to Ms. Penn and her attendant rights.  Although Alley represented Ms. Penn only in connection with the domestic violence charge, he was aware that Ms. Penn might pursue a civil action for false arrest or malicious prosecution.

Both Alley and Ms. Penn's divorce lawyer accompanied her to her court appearance on April 3, 2001.  Prior to the commencement of the proceedings, Mr. Penn's counsel approached Alley and informed Alley that the charges against both Ms. Penn and Mr. Penn would be dropped if they were willing to sign a release. Ms. Penn discussed the ramifications of this option with Alley.  Eventually, Ms. Penn decided that she would sign the release in return for the dismissal of the

4

criminal charges against her. Ms. Penn testified that she signed the release because she felt that if she did not sign it, she would go to jail.

It is undisputed in the record that both Ms. Penn and Mr. Penn signed releases. By its terms, the release Ms. Penn signed indicates that she was releasing forever the City, Officer Howard, and Officer Timmerman, from all actions, causes of action, claims and demands that she had against them by reason of their civil liability to her for police misconduct up to and including the date of the release. The release specifies that in exchange, the City will forbear criminal prosecution against Ms. Penn. Calvin Williams, the City Attorney ("City Attorney"), informed the court of the offer he made to Ms. and Mr. Penn. After Ms. Penn signed her release, the City Attorney *nolle prosequied* the domestic violence charge against her.

B. *Procedural History*

In August 2001, four months after she signed the release, Ms. Penn filed her initial complaint, naming only the City as defendant. Ms. Penn's original complaint contained two counts against the City: Count I, brought pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged violations of Ms. Penn's Fourth and Fourteenth Amendment rights; and Count II, brought pursuant to Alabama law for negligent supervision and training. In September 2002, Ms. Penn filed an

amended complaint, adding Officer Howard, Officer Timmerman, and the City Attorney. Ms. Penn added new claims against these Appellees based on 42 U.S.C. §§ 1983 and 1988 and added more claims based on Alabama tort law and contract rescission. In November 2002, Ms. Penn amended her complaint again, revising the prior allegations. Ms. Penn subsequently dismissed her claims against the City Attorney.

The parties filed cross-motions for summary judgment. The district court granted the Appellees' motion for summary judgment, finding that the release Ms. Penn signed was valid under federal law. Therefore, the district court concluded that Ms. Penn could not pursue her federal claims against the Appellees. Alternatively, the district court found that the release was also valid under Alabama law. Recognizing that it no longer had supplemental jurisdiction over Ms. Penn's state law claims, the district court dismissed those claims without prejudice. Ms. Penn then perfected this appeal.

## II. ISSUE

Whether the district court properly granted summary judgment to the Appellees on the basis that the release Ms. Penn signed was valid.

## III. STANDARD OF REVIEW

This court reviews *de novo* the district court's order granting summary judgment, applying the same legal standards used by the district court. *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1242-43 (11th Cir. 2003).

## IV.  DISCUSSION

Ms. Penn contends that the release she signed is a contract which violates the Alabama compounding statute, and as such, is void as a matter of public policy.  Therefore, Ms. Penn contends that the release cannot act as a bar to any of her claims, either federal or state.  The Alabama compounding statute provides as follows:

> (a) A person commits the crime of compounding if he gives or offers to give, or accepts or agrees to accept, any pecuniary benefit or other thing of value in consideration for:
>
>> (1) Refraining from seeking prosecution of a crime; or
>> (2) Refraining from reporting to law enforcement authorities the commission or suspected commission of any crime or information relating to the crime.
>
> (b) It is a defense to a prosecution under this section that the pecuniary benefit did not exceed an amount which the actor reasonably believed to be due as restitution or indemnification for harm caused by the offense.  The burden of injecting this defense is on the defendant.
>
> (c) Compounding is a Class A misdemeanor.

Ala. Code § 13A-10-7 (1975).

7

As with any question of statutory interpretation, we "'read the statute using the normal meanings of its words.'" *Horton Homes, Inc. v. United States.*, 357 F.3d 1209, 1211 (11th Cir. 2004) (quoting *Consolidated Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir. 1997)); *see also United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (stating that "[t]he starting point for all statutory interpretation is the language of the statute itself"). "We do not look at one word or term in isolation, but instead we look to the entire statutory text." *DBB, Inc.*, 180 F.3d at 1281. Giving a normal meaning to every word in the statute, and considering the entire context of the statute, the City Attorney's actions do not constitute "[r]efraining from seeking prosecution of a crime" or "[r]efraining from reporting to law enforcement authorities the commission or suspected commission of any crime or information relating to the crime." Ala. Code § 13A-10-7(a).

Although Ms. Penn and the City both agree that each received a thing of value when Ms. Penn signed the release, the City Attorney was not "refraining from *seeking* prosecution" when he dismissed the charges against Ms. Penn after she signed the release. The City Attorney prosecutes. He does not seek to prosecute. A common understanding of the word "seek" is to "look for," or "pursue" something. *See* Webster's Third New International Dictionary (1986).

The City Attorney did not have to look for a prosecution; he already had "found" it.

Furthermore, this interpretation of the statute is fully consistent with the origin of the statute. This statute is adapted from the Model Penal Code. *See* Ala. Code § 13A-10-7, commentary. The Model Penal Code modified the common-law crime of compounding, which was originally called "theftbote." ALI, Model Penal Code § 242.5 (1980). Theftbote "referred to an agreement between a thief and his victim that the stolen property would be returned in exchange for an undertaking not to cooperate in prosecution." *Id.*, Comment 1, p. 244. Traditionally, the law of compounding has had a distinctive impact on the victims of crime. *Id.*, Comment 3. Thus, "the purpose of the law of compounding is to encourage reporting of crime by punishing agreements to forestall prosecution." *Id.*, at 251. Therefore, "[t]he central issue in the law of compounding is whether to except from liability the victim of a crime who agrees to drop criminal charges if the alleged offender makes restitution for the harm caused." *Id.*, at 249.

The statute clearly implies a private individual's consideration of filing suit – not a City Attorney's prosecution of an individual for violation of a crime. Subpart (b) states that it is a defense to a prosecution "that the pecuniary benefit did not exceed an amount which the actor reasonably believed to be due as

9

restitution or indemnification for harm caused by the offense." Ala. Code § 13A-10-7(b). This defense cannot logically or practically apply to a City Attorney.

We note that Ms. Penn has not cited any authority, nor can we find any, for her contention that the compounding statute applies to a City Attorney's dismissal of charges against an individual in exchange for a general release of that individual's civil claims relating to his criminal prosecution. *See* Model Penal Code § 242.5, Comment 3, pp. 251-52 (noting the "few reported cases under compounding statutes," and commenting that "[m]ost reported decisions dealing with compounding, however, are civil disputes in which the victim is attempting to enforce a note or other obligation given by the alleged offender"). We also note that the Alabama Supreme Court, although not discussing the Alabama compounding statute, affirmed the dismissal of a lawsuit against law enforcement officers and prosecutors by an individual who signed a general release of his claims relating to his arrest. *Gorman v. Wood*, 663 So. 2d 921, 922 (Ala. 1995). Relying on *Town of Newton v. Rumery*, 480 U.S. 386, 107 S. Ct. 1187, 94 L. Ed.

10

2d 405 (1987),[1] the court held that barring ambiguity or allegations of fraud, the terms of the release document "must be given effect." *Id.*

Considering its origin and giving effect to the ordinary meaning of its terms, we hold that the Alabama compounding statute does not apply to a City Attorney's actions when dismissing charges against an individual in exchange for a release of civil liability. Accordingly, we conclude that the release agreement was valid and is a bar to Ms. Penn's pursuit of civil claims against the Appellees.

## V. CONCLUSION

The district court properly determined that the release Ms. Penn signed was valid and barred her pursuit of civil claims against the City and the officers. Accordingly, we affirm the district court's grant of summary judgment to the Appellees.

AFFIRMED.

---

[1] In *Rumery*, the Supreme Court considered "whether a court properly may enforce an agreement in which a criminal defendant releases his right to file an action under 42 U.S.C. § 1983 in return for a prosecutor's dismissal of pending criminal charges." 480 U.S. at 389, 107 S. Ct. at 1190. The Court noted that the agreement purported to waive a right to sue conferred by a federal statute; thus, the question of whether the agreement was enforceable was a question of federal law. *Id.* at 392, 107 S. Ct. at 1191. Resolving the question by reference to traditional common-law principles, the Court considered whether the interest in the agreement's enforcement was "outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Id.* The Court then concluded that the agreement "was voluntary, that there [was] no evidence of prosecutorial misconduct, and that enforcement of this agreement would not adversely affect the relevant public interests." *Id.* at 398, 107 S. Ct. at 1195. *See Fomby-Denson v. Dep't of the Army*, 247 F.3d 1366, 1377 n.9 (Fed. Cir. 2001) (noting that *Rumery* carved out an exception to the crime of compounding where a prosecutor offers to dismiss criminal charges in exchange for a release of civil claims).