**Allison SMITH, Plaintiff,**

v.

**UNDER ARMOUR, INC., Defendant.**

Case No. 08–22835–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 18, 2008.

Matthew Jon Militzok, Hollywood, FL, for Plaintiff.

William Patrick Heller, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, Renee L. Zipprich, Richard E. Gottlieb, Dykema Gossett PLLC, Chicago, IL, Samuel Swain Heywood, Akerman Senterfitt, Miami, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Under Armour, Inc.'s Motion to Dismiss [D.E. 11], filed on November 24, 2008. The undersigned has carefully reviewed the Motion, the record, and applicable law.

### I. BACKGROUND

On October 10, 2008, Plaintiff, Allison Smith, filed her Complaint [D.E. 1] alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). Plaintiff alleges Defendant is a corporation that accepts credit cards and debit cards in transacting busi-

ness. (*See Compl.* at ¶ 5). On September 26, 2008, Plaintiff engaged in a transaction with Defendant via Defendant's website, www.underarmour.com. Plaintiff alleges Defendant provided her "an electronically printed receipt which displayed, without redaction, the expiration date" of the credit or debit card Plaintiff used to conduct the transaction. (*Id.* at ¶¶ 13–14). Plaintiff attaches to her Complaint a copy of a print-out from the webpage confirming the sale. Plaintiff's truncated credit card number appears on the print-out as well as the expiration date. Plaintiff alleges Defendant's inclusion of the expiration date violates the requirements of FACTA. Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing the on-line transaction produced no printed paper receipt, and accordingly the "printing" requirement of FACTA is unsatisfied, and Plaintiff fails to state a claim.

## II. LEGAL STANDARD

A motion to dismiss a complaint for failure to state a claim requires that a court accept the facts pleaded as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests....'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Id.* at 1964–65 (citations omitted). "[A] complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir.2008) (quoting *Twombly,* 127 S.Ct. at 1965). "When the allegations contained in a complaint are wholly conclusory ... and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Davidson v. Georgia,* 622 F.2d 895, 897 (5th Cir.1980) (citations omitted).

## III. ANALYSIS

■ FACTA prohibits merchants from displaying certain personal credit card information upon a receipt provided to a customer at a point of sale. Specifically, FACTA provides:

(g) Truncation of credit card and debit card numbers

(1) In general

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3) Effective date

This subsection shall become effective—

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g). "Congress's aim in passing FACTA was to reduce the chance that a consumer would be injured (usually through identity theft) by virtue of the inclusion of sensitive information on a credit/debit card receipt." *Grabein v. 1–800–Flowers.com, Inc.*, Case No. 07–cv–22235–HUCK, 2008 WL 343179, at *3 (S.D.Fla. Jan. 29, 2008) (footnote omitted). Willful violations of Section 1681c(g)(1) may result in actual damages to the merchant of up to $1,000, "such amount of punitive damages as the court may allow," costs, and attorney's fees. 15 U.S.C. § 1681n. FACTA does not define the words "print" and "receipt."

Defendant moves to dismiss Plaintiff's claim, arguing the truncation requirements of FACTA are inapplicable to transactions conducted online, where the merchant provides the customer only an electronic confirmation of the sale displayed on the customer's computer screen. Defendant contends the on-screen confirmation of the sale, which the consumer is free to print, does not constitute a "receipt" under FACTA. In other words,

Defendant did not "print" the information on the receipt because it was provided only in electronic form.[1] There is no controlling authority on this question, and courts, including courts within this District, have reached conflicting conclusions.

In *Vasquez–Torres v. Stubhub, Inc.*, Case No. 07–cv–01328, 2007 U.S. Dist. LEXIS (C.D.Cal. Jul. 2, 2007), the defendant argued that in the absence of a statutory definition for the term "print," the court should look to the dictionary definition. Noting one definition from *Webster's Third New Int'l Dictionary* is "to make an impression upon," the court found the display of information on the plaintiff's computer screen was sufficient to satisfy this definition and denied the defendant's motion to dismiss. *Id.* at *6–7. The decision was also based, in part, on what the court interpreted to be Congress' intent behind the legislation, finding "Congress likely intended to prevent identity theft in all its forms, including common online identity theft, and did not intend to limit safeguards to a narrow subset of paper-printed receipts." *Id.* at *8–9. The court concluded that the defendant's argument amounted "to a mere denial of 'printing' in violation of the statutory provision. However, whether or not Plaintiff will be able to demonstrate the validity of their [sic] assertion at trial is not at issue in a 12(b)(6) motion." *Id.* at *9–10 (citation omitted).

In *1–800–Flowers.com*, 2008 WL 343179, the court agreed with the holding in *Stubhub*. With respect to the dictionary definition of "print," the court stated:

First, the Court finds that the ordinary meaning of the term "print" encompasses the information included when a seller electronically transmits a

---

1. To the extent Defendant argues the confirmation of the sale displayed on Plaintiff's computer screen and attached to her Complaint is not a "receipt," the undersigned is unpersuaded. Accordingly, the only issue addressed in this Order is whether the "print" requirement is satisfied.

receipt. To guide statutory interpretation, courts often turn to dictionaries to illuminate the ordinary meaning of statutory terms. *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir.2004). Defendants assert that the Court should rely on the Oxford English Dictionary, which defines "print" as "[t]o make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc., esp. from inked blocks, types or plates." *Oxford English Dictionary* (Draft 3d ed. 2007). But the Oxford English Dictionary also defines "print" as "to set . . . on any surface, by . . . writing," though that definition appears under "General senses" and not in the general typography section. In the general typography section, the Oxford English dictionary also defines "print" as "[t]o mark (paper, etc.) with printed characters . . . ." The word "mark" is not limited to specific surfaces; instead, "paper" is listed as one example of a surface that can be marked, leaving room to conclude that a computer screen is another surface that can be marked.

Moreover, Plaintiffs cite other definitions to illustrate that the term "print" as used in § 1681c(g) is broad enough to encompass information a seller includes on an electronically transmitted receipt. Plaintiff defines "print" as "to display on a surface (as a computer screen) for viewing." *Merriam–Webster's Collegiate Dictionary*, 10th ed. p. 924 (2002). Because both Defendants' and Plaintiff's definitions of "print" are broad enough to encompass the information included when a seller transmits an electronic receipt, Plaintiff's Complaint here is consistent with the claim that Defendants "mark[ed]" his computer screen "with printed characters" when it transmitted an electronic receipt with his credit card expiration date contained on it.

*Id.* at *3.

As in *Stubhub*, the *1–800–Flowers.com* court also found that an interpretation of "print" that encompasses online receipts better comports with the legislative intent underlying FACTA.

> Congress's aim in passing FACTA was to reduce the chance that a consumer would be injured (usually through identity theft) by virtue of the inclusion of sensitive information on a credit/debit card receipt. Eliminating electronically transmitted receipts from coverage of FACTA would undercut Congress's ability to stamp out identity theft in its various and rapidly changing forms, especially considering the volume of transactions that now take place online. Thus, Defendant's argument that Congress aimed to reduce the likelihood of sensitive personal information falling into the wrong hands by mandating truncated information on in-store paper receipts while failing to mandate the same truncation requirements on electronic receipts transmitted over vulnerable digital communication lines is unreasonable.

*Id.* (footnotes omitted). Additionally, the court found relevant that merchants often encourage a consumer to print and retain the electronic receipt.[2]

Other authority supports the opposite view. In *King v. Movietickets.com*, Case No. 07–cv22119–GOLD, slip op. at 9 [D.E. 36] (S.D.Fla. Feb. 13, 2008), the court also

2. The court certified the question of the applicability of FACTA to electronic receipts for an interlocutory appeal to the Eleventh Circuit Court of Appeals on March 12, 2008, but it appears the parties agreed to voluntarily dismiss the appeal. *See Grabien v. 1–800–Flowers.com, Inc.*, Case No. 08–12643 (11th Cir.).

looked to dictionary definitions of "print" and found they confirmed the "common sense impression that a 'printed' item is something physical and tangible that can be impressed or marked upon, such as a printed paper." The court also ruled that, "[w]hen § 1681c(g) is looked at as a whole, it is clear that this subsection focuses on paper receipts electronically printed by a cash register or other machine and provided to consumers at the point of sale or transaction." *Id.* at 10. The court distinguished *Stubhub* and *1–800–Flowers.com* as failing to consider the plain meaning of "printed" when read in the context of Section 1681c(g). The court rejected the plaintiff's argument that his own printing of the electronic receipt constituted "printing" within the meaning of the statute, because the statute requires the entity that accepts the credit card to also do the printing and to provide the receipt to the consumer. Finally, finding the plain meaning of FACTA to be clear, the court declined to examine the history of the legislation.

An opinion from the District of Arizona "conclude[d] that the language at issue has a plain and unambiguous meaning, and that Defendants' providing an onscreen display of an Internet receipt which may be printed by the consumer does not constitute" printing within the meaning of the statute. *Narson v. Godaddy.com, Inc.,* Case No. 08–cv–0177, 2008 WL 2790211, at *3 (D.Ariz. May 5, 2008). The *Godaddy.com* court, after considering dictionary definitions, found the definitions "make clear that the common and ordinary meaning of 'to print,' both generally and in the context of computers, is to produce text by applying ink to a tangible medium, such as paper." *Id.* at *5. The court also found that considering "print" in reference to the whole statute "clearly shows that the statute contemplates transactions where receipts are physically printed using electronic point of sale devices like electronic cash registers or dial-up terminals." *Id.* at *6.

Similarly, in *Haslam v. Federated Department Stores, Inc.,* Case No. 07–cv–61871–MIDDLEBROOKS, slip op. at 7 [D.E. 48] (S.D.Fla. May 16, 2008), the court "acknowledge[d] the parties' competing dictionary definitions and case law," but found "the vast majority of definitions require some form of tangible product, such as a paper receipt." As in *Movietickets.com* and *Godaddy.com,* the court found that in viewing the term in relation to the rest of the statutory text, " 'print' must be construed to mean a paper receipt, printed electronically by a 'cash register or other machine or device' at the point of sale." *Id.* at 8. The court also noted "no clearly expressed legislative intent" that "print" encompassed the situation presented. *Id.*

Most recently, in a well-reasoned Report and Recommendation issued by Magistrate Judge Edwin G. Torres, and adopted by Judge Donald L. Graham, Judge Torres agreed with the *Movietickets.com, Godaddy.com,* and *Federated* courts. *See Grabein v. Jupiterimages Corp.,* Case No. 07–cv–22288–GRAHAM, 2008 WL 2704451 (S.D.Fla. Jul. 7, 2008). The court declared the "common meaning of the word 'print,' as defined by several dictionaries, generally connotes a 'printed' item as being something physical and tangible that can be impressed or marked upon, such as a printed paper." *Id.* at *6. With respect to the term "print" relative to other provisions of FACTA, the court found "significant that the statute only applies to receipts 'provided to the cardholder at the point of the sale or transaction.' Considered in context, the word 'print' must apply to tangible, paper receipts. There is no tangible 'point of sale or transaction' with respect to e-commerce; but the 'point of sale or transaction' clause makes sense

in the context of printed paper receipts." *Id.* at *7.[3]

**■** The undersigned is persuaded the term "print" does not encompass electronic on-screen receipts, such as the one Plaintiff received in this case. " '[T]he starting point for interpreting a statute is the language of the statute itself.' " *Horton Homes, Inc. v. United States*, 357 F.3d 1209, 1211 (11th Cir.2004) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). Furthermore, the Eleventh Circuit has stated, " '[a]s a basic rule of statutory interpretation, we read the statute using the normal meanings of its words.... [A]bsent a clearly expressed legislative intent to the contrary, that language is generally dispositive.' " *Id.* at 1211–12 (quoting *Consolidated Bank, N.A. v. United States Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir.1997)).

The Eleventh Circuit has "frequently" said " '[w]hen the import of words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.' " *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir.2001) (quoting *Harris v. Garner*, 216 F.3d 970, 976

(11th Cir.2000)). "When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir.1997) (citation and quotation marks omitted). The court "must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

As each of the other courts to consider this issue has noted, " '[t]o determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance.' " *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir.2004) (quoting *United States v. McNab*, 331 F.3d 1228, 1237 (11th Cir.2003)). Predictably, Plaintiff cites the dictionary definitions and arguments the courts in *Stubhub* and *1–800–Flowers.com* found persuasive, while Defendant points to the conflicting authority.[4] The undersigned is persuaded, after a review of the dictionary definitions presented in the parties' papers and explored in the cases considering this question, the commonly understood meaning of "print" requires there

---

**3.** In several other opinions, district courts have considered the present issue in ruling on a motion for class certification. *See Harris v. Best Buy Co., Inc.*, Case No. 07–C–2559, 254 F.R.D. 82 (N.D.Ill.2008) (granting motion for class certification and concluding that Section 1681c(g) applies to computer screen displays); *Harris v. Circuit City Stores, Inc.*, Case No. 07–C–2512, 2008 WL 400862 (N.D.Ill. Feb. 7, 2008) (declining to address whether a receipt that was transmitted by email was a "receipt" within the meaning of FACTA because the issue is not germane to class certification).

**4.** Plaintiff states, " 'print,' is commonly defined as: (a) 'to display on a surface (such as

a computer screen) for viewing,' *see* Merriam Webster's Collegiate Dictionary, 10th ed. P. 924 (2002); or (b) 'Computers. To produce (data) in legible alphanumeric or graphic form,' *see* Random–House Unabridged Dictionary (2006)....' " (*Response* [D.E. 18] at 4). Defendant cites definitions mentioned in *Jupiterimages* from *Webster's New World Dictionary* (2d College Ed. 1972), " '1. to mark by pressing or stamping; make a print on or in; 2. to press or stamp (a mark, letter, etc.) on or in a surface,' " and the *Oxford English Dictionary* definition to "produce a paper printout of (information stored or accessed on a computer)." (*Motion* at 9).

to be a placement of a mark or imprint on a tangible surface, such as paper, not merely the elusive display of words on a screen.

The plain meaning of "print" does not coincide with "display on a computer screen," as Plaintiff suggests. In order for the receipt to be printed, it must be reduced to a tangible form, and notably, in the case of an electronic receipt, the consumer controls whether or not the receipt is in fact "printed." Judge Torres described the distinction appropriately when he wrote, " 'print' does not encompass on-screen computer displays because 'print' only refers to a tangible, paper receipt. That is why [the plaintiff] had to *print* a copy of his receipt to get it off of his computer; it is why the machine used to transfer text from a computer to paper is called a *printer*; and it is why a judge who asks a law clerk to *print* a case does not intend for the clerk to merely display the case on his computer screen." *Jupiterimages*, 2008 WL 2704451, at *8 (emphasis in original).

There is no need to engage in such an expansive view of the term "print" to include the display of words on a computer screen when it has a commonly understood meaning. " '[W]here Congress knows how to say something but chooses not to, its silence is controlling.' " *CBS Inc.*, 245 F.3d at 1226 (quoting *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir.2000)). Congress certainly has enacted other legislation meant to regulate the transmission of electronic information on the internet. *See e.g.*, CAN–SPAM Act, 15 U.S.C. § 7704 (imposing limitations and penalties on the transmission of unsolicited commercial email, commonly known as spam, via the internet). Accordingly, Congress could have chosen language making clear electronic receipts were within the scope of Section 1681c(g). Moreover, FACTA was enacted on December 4, 2003, well after e-commerce became commonplace; thus it cannot be said Congress was unaware of or overlooked the existence of such transactions.

The undersigned appreciates that FACTA's purpose, protecting consumers from identity theft, may not be served by excluding electronic receipts from the scope of the Act. However, it is not the place of the Court to correct Congress use of a term with a commonly understood meaning, such as "print." The Court is left with the unambiguous text of the statute, which does not apply to this situation. *See United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (internal citations and quotations omitted) ("Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result. On the contrary, deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that the legislative purpose is expressed by the ordinary meaning of the words used.").

The undersigned also agrees with courts finding that an examination of "print" within the context of Section 1681c(g) as a whole indicates the term is meant to apply to transactions producing a physical paper receipt. *See Penn v. City of Montgomery*, 381 F.3d 1059, 1062 (11th Cir.2004) (citation and quotation marks omitted) ("We do not look at one word or term in isolation, but instead we look to the entire statutory text."). Sections 1681c(g)(3)(A) and (B) set out dates for merchants to become compliant with FACTA, depending on the date the merchant began using the "cash register or other machine or device that electronically prints receipts." This focus on "cash registers" and other "devices"

used by the merchant places the term "print" in a scenario where a paper receipt is being provided to customer at the time of the transaction by the merchant. *See Movietickets.com*, at 10; *Godaddy.com*, 2008 WL 2790211, at *5; *Federated*, at 8; *Jupiterimages*, 2008 WL 2704451, at *7.

■ Because the plain meaning of the statute unambiguously requires there to be a paper receipt in order for the transaction to be covered, it is unnecessary to examine the legislative history of FACTA. Admittedly, a court should "look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir.1999) (citing *Consolidated Bank*, 118 F.3d at 1463–64). However, because, as stated, the language of the statute is unambiguous, there is no need to examine legislative history on this basis.

Additionally, the application of the plain meaning of "print" does not lead to an absurd outcome. The result is that online transactions producing no paper receipt are not covered, whereas transactions involving paper receipts in "brick and mortar" establishments must comply with FACTA's mandate.[5] There are many reasons these transactions may be treated disparately. It is certainly plausible the possibility of identity theft is greater once a paper record is printed. It might be more likely the record will be discarded with other materials identifying the individual, and increase the potential exposure to an identity thief who searches through trash.

The printing of the electronic record, on the other hand, is entirely at the discretion of the consumer, thus it is quite possible the consumer may never have a physical record of the transaction, reducing the likelihood of discovery by an identity thief. Alternatively, there are also obvious concerns that electronic records may be accessed or "hacked" in a manner analogous to the "dumpster diving" identity theft scenario. However, given the nature of these differences, it is not an absurd result that online transactions may be regulated differently from physical transactions.

Lastly, the parties have pointed to no *clear* contrary legislative intent indicating online transactions are meant to fall within FACTA's scope. There is no need, therefore, to look to the legislative history of the statute, as the plain meaning of the term "print" controls.

Because Defendant did not provide Plaintiff with a printed paper receipt recording the transaction giving rise to Plaintiff's FACTA claim, Plaintiff has failed to state a claim under FACTA.

## IV. CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion [D.E. 11] is **GRANTED**. The Complaint is **DISMISSED**. The Clerk of the Court is instructed to **CLOSE** this case. Any pending motions are **DENIED AS MOOT.**

---

5. There is also the possibility, although Plaintiff has not raised it in this case, that after a transaction occurred online, the merchant may enclose a paper receipt with the purchased merchandise upon shipment to the consumer. A plaintiff asserting a FACTA claim arising from a non-compliant paper receipt obtained in this manner may have a stronger argument that such a transaction is covered.