**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIMITRIY SIMONOFF,
        *Plaintiff-Appellant,*

v.

EXPEDIA, INC.,
        *Defendant-Appellee.*

No. 10-35595

D.C. No.
2:09-cv-01517-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
March 8, 2011—Seattle, Washington

Filed May 24, 2011

Before: M. Margaret McKeown, Raymond C. Fisher, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge McKeown

6799

## COUNSEL

David Oppenheim (argued), Rolling Meadows, IL; David S. Breskin, Breskin Johnson & Townsend PLLC, Seattle, Washington, for the plaintiff-appellant.

Britton F. Davis, Wilson Sonsini Goodrich & Rosati, Seattle, Washington; Rodney G. Strickland, Jr. (argued) and Laura Grant, Wilson Sonsini Goodrich & Rosati, Palo Alto, California, for the defendant-appellee.

---

## OPINION

McKEOWN, Circuit Judge:

In 2003, Congress passed the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, in part to combat identity theft. FACTA provides that

> no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1). This restriction covers only "receipts that are electronically printed, and [does] not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." *Id.* § 1681c(g)(2).

Expedia, Inc. runs a website that allows users to make travel arrangements online. Like other merchants "that accept[ ] credit cards or debit cards," *see id.* § 1681c(g)(1),

Expedia must comply with FACTA. Dimitriy Simonoff purchased travel arrangements through Expedia's website. Expedia then emailed him a receipt, which included the expiration date of Simonoff's credit card. He claims that this email receipt violates FACTA.

The question we consider under FACTA is the meaning of the words "print" and "electronically printed" in connection with an emailed receipt. "Print" refers to many different technologies—from Mesopotamian cuneiform writing on clay cylinders to the Gutenberg press in the fifteenth century, Xerography in the early twentieth century, and modern digital printing—but all of those technologies involve the making of a tangible impression on paper or other tangible medium. *See generally* S.H. Steinberg, *Five Hundred Years of Printing* (new ed. 1996). Although computer technology has significantly advanced in recent years, we commonly still speak of printing to paper and not to, say, iPad screens. Nobody says, "Turn on your Droid (or iPhone or iPad or Blackberry) and print a map of downtown San Francisco on your screen." We conclude that under FACTA, a receipt that is transmitted to the consumer via email and then digitally displayed on the consumer's screen is not an "electronically printed" receipt. We affirm the district court's dismissal of Simonoff's claims under Rule 12(b)(6).

## ANALYSIS

### I.  FORUM SELECTION CLAUSE

We first address a procedural aspect of the case—a forum selection clause. Simonoff initially filed an action in Illinois state court. Expedia removed the case to federal court and then moved to dismiss the action on the basis of the forum selection clause in Expedia's user agreement. Simonoff voluntarily dismissed the action and re-filed his suit in state court in King County, Washington. Expedia again removed the case

to federal court, and the district court denied Simonoff's motion to remand.

Before a user can complete a transaction through Expedia's website, the user must consent to a user agreement that outlines the terms and conditions of the website's use. The agreement contains a forum selection clause that provides: "You hereby consent to the exclusive jurisdiction and venue of courts in King County, Washington . . . in all disputes arising out of or relating to the use of this Website." The thrust of Simonoff's argument is that "exclusive jurisdiction and venue . . . in King County" limits jurisdiction to the state courts.

We apply federal law in interpreting the forum selection clause in Expedia's agreement. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam). The " 'plain language of the contract should be considered first,' " *id.* (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)), with the understanding that the " 'common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it,' " *id.* (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).

Our recent decision in *Doe 1* is central to our analysis. There we considered a forum selection clause in AOL's website user agreement that provided for "exclusive jurisdiction for any claim or dispute . . . in the courts of Virginia." *Id.* at 1080. We concluded that the choice of the preposition "of" in the phrase "the courts of Virginia" was determinative—"of" is a term " 'denoting that from which anything proceeds; indicating origin, source, descent, and the like.' " *Id.* at 1082 (quoting *Black's Law Dictionary* 1080 (6th ed. 1990)). Thus, the phrase "the courts of" a state refers to courts that derive their power from the state—i.e., only state courts—and the forum selection clause, which vested exclusive jurisdiction in

the courts "of" Virginia, limited jurisdiction to the Virginia state courts. *Id.* at 1081-82.

**[1]** By way of contrast, however, we observed in *Doe 1* that a forum selection clause referring to "courts in" a state imposes a geographic limitation, not one of sovereignty. *Id.* at 1082 & n.8. The word "in" means to " 'express[ ] relation of presence, existence, situation, inclusion . . . ; inclosed or surround by limits, as in a room.' " *Id.* at 1082 n.8 (quoting *Black's Law Dictionary 758* (6th ed. 1990)). Hence the phrase "courts in" a state includes any court within the physical boundaries of the state, even if the court does not derive its power and authority from the sovereignty of the state. *See id.* at 1082 & n.8. In short, the rule we adopted in *Doe 1* is that a forum selection clause that specifies "courts of" a state limits jurisdiction to state courts, but specification of "courts in" a state includes both state and federal courts.[1]

**[2]** The forum selection clause in the Expedia contract vests "exclusive jurisdiction and venue . . . [in] the courts *in* King County" (emphasis added). Because the clause uses the preposition "in," the contract contemplates federal as well as state courts as proper courts for adjudication. As other circuits have recognized, when a federal court sits in a particular county, the district court is undoubtedly "in" that county. *See Alliance Health*, 553 F.3d at 399-400; *Global Satellite Commc'n*, 378 F.3d at 1272.[2]

---

[1]Our approach is in accord with other circuits that have addressed similar language in forum selection clauses. *See FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010); *Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399-400 (5th Cir. 2008); *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926 (10th Cir. 2005); *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271-72 (11th Cir. 2004); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 397-98 (5th Cir. 2003) (per curiam); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992); *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 6-7 (1st Cir. 1984).

[2]Simonoff claims that the Western District of Washington is not truly "in" King County because it encompasses and has physical locations in

Simonoff's reliance on the Tenth Circuit's decision in *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318 (10th Cir. 1997), is at odds with our precedent. The forum selection clause in *Excell* provided that "[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado." *Id.* at 320. The Tenth Circuit held that, under this clause, venue was proper only in state court. *Id.* at 321. In doing so, the court relied on the notion that "[f]or federal court purposes, venue is not stated in terms of 'counties.' Rather, it is stated in terms of 'judicial districts.' " *Id.* (citation omitted). But, as the Fifth Circuit noted in *Alliance Health*, the reasoning in *Excell* "would be more persuasive were the federal courts organized in total disregard of state counties; if, for instance, federal judicial districts were defined by metes and bounds." *Alliance Health*, 553 F.3d at 400-01. Because judicial districts are in fact defined by counties, nothing in *Excell* undermines our reasoning in *Doe 1*; nor may we sidestep our own precedent.[3]

[3] Consistent with *Doe 1* and the decisions of our sister circuits, we hold that a forum selection clause that vests "exclusive jurisdiction and venue" in the courts "in" a county provides venue in the state and federal courts located in that

---

several counties. However, the present action was removed to the Seattle Division of the Western District of Washington, which has its only courthouse in King County. This case unquestionably was removed to a court "in" King County, Washington.

[3]We reject Simonoff's argument that the phrase "courts in" is not dispositive because the forum selection clause in Expedia's contract refers jointly to "jurisdiction and venue." *See, e.g.*, *FindWhere*, 626 F.3d at 754 (making no distinction in interpretation where the forum clause addressed both jurisdiction and venue). Simonoff also relies on the word "exclusive," arguing that because "exclusive" implies "one," this case could only be brought in state court. But in this case, "exclusive" means to the exclusion of courts not located in King County, Washington; it does not denote a "singular" court. *See Alliance Health*, 553 F.3d at 400 (upholding venue in federal court based on a clause providing "exclusive venue . . . in" a county).

county. The district court did not err in declining to remand the case to state court.

## II.  FACTA DOES NOT COVER EMAILED RECEIPTS

[4] We next consider Simonoff's claim that Expedia violated FACTA by including the expiration date of the card in an emailed receipt. The crux of this dispute is whether an "electronically printed" receipt includes an email receipt displayed on a computer screen. As with all matters of statutory interpretation, "[w]e begin with the text of the statute." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1331 (2011). The relevant portion of FACTA provides:

(1) In general

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3) Effective date

This subsection shall become effective—

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit

card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g). FACTA, then, prohibits merchants from printing credit card expiration dates and non-truncated credit card numbers on "electronically printed" receipts. Resolution of Simonoff's appeal turns on the meaning of "print" and "electronically printed."

Although an issue of first impression for us, we are not the first circuit to analyze this issue. In a detailed and thoughtful opinion, the Seventh Circuit concluded that "Congress was regulating only those receipts physically printed by the vendor at the point of sale or transaction; to apply the statute to receipts that are emailed to the consumer would broaden the statute's reach beyond the words that Congress actually used." *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 802 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1007 (2011). We adopt the same interpretation in light of the plain meaning of "print" and "electronically printed" and their context in the statute.

Because the term "electronically printed" is not defined in the statute, we must determine its ordinary meaning. *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 129 S. Ct. 846, 851 (2009) (noting that undefined words in statutes carry their ordinary meaning). We begin with the meaning of the word "print," turning, as do the parties, to dictionary definitions for guidance. *See id.* (relying on dictionary definitions to ascertain the ordinary meaning of words undefined by statute).

**[5]** The ordinary meaning of "print" is clear: printing involves a physical imprint onto paper or another tangible medium. *See, e.g.*, *Webster's Third New International Dictionary* 1803 (2002) ("[T]o make an impression in or upon: mark with a print."); *American Heritage Dictionary of the English Language* 1441 (3d ed. 1996) ("To make an impression on or in (a surface) with a device such as a stamp, seal, or die."); *Oxford English Dictionary Online*, *available at*: http://www.oed.com (last visited May 9, 2011) ("To make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc., esp. from inked blocks, types, or plates."). In short, " 'print' in its transitive verb form ordinarily connotes the transfer of words or images to a tangible medium—often paper." *Shlahtichman*, 615 F.3d at 799. A printed receipt is thus a receipt that exists in physical form, not one electronically displayed on a screen.[4]

The main dictionary definitions of "print" are supported by standard modern usage of that term. As the Seventh Circuit observed:

> To "print" a receipt . . . ordinarily connotes recording it on paper. That is why [the plaintiff] had to *print* a copy of his receipt to get it off of his computer; it is why the machine used to transfer text from a computer to paper is called a *printer*; and it is why a judge who asks a law clerk to *print* a case does not intend for the clerk to merely display the case on his computer screen.

*Shlahtichman*, 615 F.3d at 799 (alteration in original) (internal quotation marks and citation omitted).

---

[4]Simonoff cites two definitions in support of the contrary view. One of those definitions, however, lists Simonoff's preferred meaning as the definition not of "print" but of "print out"—a term that does not appear in FACTA and is listed separately from "print" in the dictionary. Simonoff's alternate definition does little to aid in the interpretation of "print."

**[6]** That FACTA uses the phrase "electronically printed" as opposed to simply "print" does not change our analysis. By its terms, FACTA "appl[ies] only to receipts that are electronically printed, and [does] not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." 15 U.S.C. § 1681c(g)(2). FACTA, in other words, uses "electronically printed" as one half of the dichotomy between electronic and manual means of printing, and specifies that it applies only to the former, not the latter. *See id.* As a result, in the context of FACTA, "electronically" is an adverb modifying "printed." Put another way, "electronically" functions to clarify the *manner* of printing by differentiating receipts printed with electronic devices from receipts printed by hand or by manual imprint; it does not change the definition of "print." These contrasting options reinforce the notion that "print" connotes the making of an impression on "a tangible medium." *Shlahtichman*, 615 F.3d at 799. Although "electronically printed," when "considered in isolation, may [thus] be open to competing interpretations[,] . . . considering the provision in conjunction with the purpose and context" of the statutory text leads us to conclude that "only one interpretation is permissible." *See Kasten*, 131 S. Ct. at 1331.

**[7]** In enacting FACTA, Congress did not use language that would have clearly extended FACTA's protection to electronically mailed receipts. For example, Congress could have applied FACTA to "electronically printed *or transmitted*" receipts, to "electronically print*able*" receipts, or to "electronically displayed" receipts. *See Simonoff v. Kaplan, Inc.*, No. 10 Civ. 2923, 2010 WL 4823597, at *7 (S.D.N.Y. Nov. 29. 2010). Congress, however, chose not to do so, even though it has referred to digital methods of communication and commerce in numerous other statutes. *See Shlahtichman*, 615 F.3d at 801-02 (canvassing various other federal statutes that use terms such as "Internet," "Internet websites," "electronic mail," and "online service," among others). We can't fill in the blanks with words that Congress didn't supply.

We may, of course, look to the structure of FACTA and its other provisions for further guidance on the meaning of "print." *See Kasten*, 131 S. Ct. at 1331-33 (examining other uses of a phrase within a statute, in other statutes, in agency regulations, and in common judicial usage of a term). The statutory context confirms that the word "print" limits FACTA's scope to receipts printed on paper or another tangible medium.

FACTA contains a staggered implementation provision that requires "any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" to comply with the statutory requirements by one of two dates, depending on when the device entered into use. 15 U.S.C. § 1681c(g)(3). This provision is significant for two reasons. First, the implementation provision applies only to machines that generate physical receipts. Cash registers unquestionably do so. The phrase extending coverage to any "other machine or device" "may be given more precise content by the neighboring words with which it is associated." *United States v. Stevens*, 130 S. Ct. 1577, 1588 (2010) (internal quotation and citation omitted). Thus, "other machine or device" should be read in light of "cash register."[5] So read, "cash register or other machine or device" excludes machines that do no more than electronically display information. Like a cash register, the device must print the receipt.

FACTA's implementation schedule is also noteworthy because it differs depending on when a particular device was put into use; the statute necessarily contemplates that the "person that accepts credit cards or debit cards for the transac-

---

[5]"Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *In re Estate of Covington*, 450 F.3d 917, 922 (9th Cir. 2006) (alteration omitted) (internal quotation marks and citation omitted). Because "other machine" and "device" are broad terms, they should be read as embracing the same subject matter as the more specific term "cash register."

tion of business" has control over the "cash register or other machine or device that electronically prints" a receipt. *See* 15 U.S.C. § 1681c(g)(1) & (3). This provision is aimed at the vendor, not the consumer. Devices that print paper receipts at the store satisfy the condition, because merchants have direct control over those devices. By contrast, consumers' computer screens do not fit into this regime. If computer screens were deemed to "print" receipts within the meaning of the statute, merchants' liability would hinge on the date the customer purchased and began using a computer screen—an unintended, nonsensical, and unpredictable result.[6]

FACTA also applies only to those devices that generate receipts "at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). "Point of sale" is a term of art that applies to "face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt." *Shlahtichman*, 615 F.3d at 800. FACTA's use of this phrase, along with the other phrases already referenced, furnishes additional evidence that a "printed" receipt is one given to the customer in a tangible form.

**[8]** Given the plain meaning of "print," the fact that the term "electronically" modifies the method of printing and does not alter the definition of "print," the staggered implementation schedule that applies to physical devices that print paper receipts, and the limitation of the statute to receipts produced at the point of the sale or transaction, we hold that FACTA is unambiguous in its scope. The text of FACTA simply leaves no room to doubt that "electronically printed" receipts include only receipts impressed onto a tangible medium by electronic devices at the point of the sale or transaction, not receipts that are electronically transmitted to an email account or displayed on a computer screen.

---

[6]Today, some retailers use devices that generate either a paper receipt in the store or an email receipt, at the customer's option. In any case, merchants like Expedia who make sales over the Internet have no control over whether, or how, their customers print receipts.

Our obligation to construe FACTA broadly does not change the result here. FACTA, "as a remedial statute, should be construed liberally, and its exceptions should be read narrowly." *See Whisnant v. United States*, 400 F.3d 1177, 1184 (9th Cir. 2005) (quoting *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002)). Nevertheless, "[i]t is our function to give the statute the effect its language suggests, however modest that may be[,] not to extend it to admirable purposes it might be used to achieve." *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010).

**[9]** We join the Seventh Circuit, as well as the solid majority of district courts that have addressed FACTA's scope, in holding that FACTA does not apply to receipts sent to a customer's email account and then displayed on a screen. *See Shlahtichman*, 615 F.3d at 798 (collecting cases). Accordingly, we affirm the judgment dismissing Simonoff's suit.

**AFFIRMED.**