Michele **ANDRADE**, Plaintiff,

v.

**DESERT CHAMPIONS LLC**, Defendant.

No. C–15–1394 EMC

United States District Court, N.D. California.

Signed 07/09/2015

Eric A. Grover, Robert William Spencer, Keller Grover LLP, San Francisco, CA, for Plaintiff.

Lawrence E. Butler, Patty H. Lee, Seyfarth Shaw LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

EDWARD M. CHEN, District Judge

### I. *INTRODUCTION*

On March 26, 2015, Plaintiff Michele Andrade filed a complaint alleging that Defendant Desert Champions LLC violated a provision of the Fair Credit Reporting Act ("FACTA") by providing her with a receipt that did not properly truncate her credit card information. *See* Docket No. 1 ("Compl."). Pursuant to Rule 23(a), Plaintiff is bringing suit on behalf of herself and a class similarly situated consumers who received such receipts from Defendant in violation of FACTA. *See Id.* Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint. Docket No. 14.

### II. *BACKGROUND*

Desert Champions LLC ("Defendant") is a California company that operates a tennis tournament called the BNP Paribas Open ("the Open"). Compl. ¶ 5. Defendant sells tickets to the Open online. *See* Compl. ¶ 9. On November 6, 2014, Michele Andrade ("Plaintiff") purchased tickets from Defendant's online store, using her Visa credit card. *Id.* Defendant mailed Plaintiff her tickets and her receipt. *Id.* That receipt provided (1) the first digit of her Visa credit card number; and (2) the expiration date of her Visa credit card. *Id.* Plaintiff alleges that since at least 2013, consumers that purchased items from Defendant using a credit or debit card have received receipts—like the one she received—containing both the expiration date and the first digit of the card number on the card used. Compl. ¶ 10. According to Plaintiff, Defendant's failure to properly truncate the information on its receipts was a willful violation of FACTA, entitling Plaintiff and the class of consumers she represents to statutory and punitive damages. Compl. at p. 8. Plaintiff does not allege any actual damages resulting from Defendant's conduct. *Id.*

### III. *DISCUSSION*

#### A. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009). While

"a complaint need not contain detailed factual allegations .... it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal,* 129 S.Ct. at 1949.

## B. *15 U.S.C. § 1681c(g)*

FACTA prohibits any person that accepts credit or debit cards from printing more than the last five (5) digits of the card number on the receipts its provides to the cardholder. That provision of FACTA, § 1681c(g), provides as follows:

(1) In general

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date ***upon any receipt provided to the cardholder at the point of the sale or transaction.***

(2) Limitation

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3) Effective date

This subsection shall become effective—

(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g)(emphasis added).

Defendant argues that this statute only regulates receipts that are provided to consumers during face-to-face interactions in brick and mortar stores. Specifically, Defendant argues that the plain language of the statute covers only those receipts "provided to the cardholder at the point of the sale or transaction." *Id.* According to Defendant, "the point of the sale or transaction" should be construed as referring to the place where the purchase is made, thus excluding receipts provided outside of the store—such as receipts provided by mail. In support of this argument, Defendant relies heavily upon *Simonoff v. Expedia, Inc.,* 643 F.3d 1202, 1205 (9th Cir.2011).

In *Simonoff,* the Ninth Circuit addressed the question of whether emailed receipts fell within the ambit of § 1681c(g). 643 F.3d at 1204. The *Simonoff* court determined that emailed receipts did not fall within the purview of § 1681c(g) because (1) the statute limits itself to receipts that are "electronically printed;" and (2) emails are not "electronically printed" within the meaning of § 1681c(g)(2). *Id.* at 1208. In reaching the conclusion that emails are not "electronically printed," the court relied on the "the plain meaning of 'print' and 'electronically printed' and their context in the statute." *Id.* at 1207. In support of its more "tangible"—*i.e.* non-email-based—construction of the term

"printed," the court referred to the Seventh Circuit's construction of the § 1681c(g)(1) phrase "point of the sale or transaction," stating:

> 'Point of sale' is a term of art that *applies to face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt.* FACTA's use of this phrase, along with the other phrases already referenced, furnishes additional evidence that a 'printed' receipt is one given to the customer in a tangible form.

*Id.* at 1210 (quoting *Shlahtichman v. 1–800 Contacts, Inc.,* 615 F.3d 794, 802 (7th Cir. 2010) (quotation marks and citations omitted) (emphasis added).

According to Defendant, the *Simonoff* interpretation of "point of sale" limits § 1681c(g)(1) to receipts that are "handed" to the customer in a "face-to-face transaction." Thus, under Defendant's reasoning, Plaintiff's § 1681c(g)(1) claim fails as a matter of law because the claim herein is predicated on Andrade's alleged online purchase, wherein the receipt was not "handed" to the Plaintiff at the point of the sale, but mailed. Furthermore, Defendant argues that because Andrade's allegations do not support a claim under FACTA, Plaintiff does not have standing to bring claims on behalf of those that allegedly made box-office purchases.

In response, Plaintiff argues that *Simonoff* only requires that a non-compliant receipt be physically printed, not physically handed over, to trigger liability under FACTA. In essence, Plaintiff argues that *Simonoff*'s construction of "receipt provided to the cardholder at the point of the sale or transaction" is not controlling, and that this Court should construe that phrase as including printed receipts provided by mail.

■ As a threshold matter, Plaintiff is correct that the *Simonoff* court's construction of "point of the sale or transaction" is not controlling because it is judicial dictum.[1] *United States v. Johnson,* 256 F.3d 895, 921 (9th Cir.2001). It was not necessary to the Ninth Circuit's decision which resolved only the question of whether the receipt needed to be printed. This leaves open for this Court the construction of the term "point of the sale or transaction." *Johnson,* 256 F.3d at 921. Nonetheless, the Court finds the Ninth Circuit's construction of that term persuasive and adheres to it.

"To determine the meaning of a term in a federal regulation, we look to the common meaning of the word." *Cleveland v. City of L.A.,* 420 F.3d 981, 989 (9th Cir. 2005). "When a statute does not define a term, a court should construe that term in accordance with its ordinary, contemporary, common meaning," which may appear in its dictionary definition. *Id.* However, "where Congress has used technical words or terms of art, it is proper to explain them by reference to the art or science to which they are appropriate." *Corning Glass Works v. Brennan,* 417 U.S. 188, 201, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (quotation marks and citation omitted).

Applying the common meaning of the words used, the phrase "at the point of the sale or transaction" is susceptible to two reasonable interpretations. One interpretation reads "point" as referring to the "moment"[2] in time *when* a sale occurred.

---

1. Cf. *Dragor Shipping Corp. v. Union Tank Car Co.,* 371 F.2d 722, 726 (9th Cir.1967) ("Where an appellate court decision rests on two or more grounds, none can be relegated to the category of *obiter dictum.*").

2. *The American Heritage Dictionary of the English Language* 1398 (3rd ed. 1992) ("A spe-

The other interpretation reads "point" as referring to a particular "location, spot, or position"[3] *where* a sale occurred. As discussed, both the Seventh and Ninth Circuits have endorsed a construction that reads "point of the sale" as the physical location of the sale. So have numerous other district courts. *See Kivo v. Blumberg Excelsior, Inc.*, 982 F.Supp.2d 217, 222 (E.D.N.Y.2013); *Holt v. LivInn Suites, Inc.*, 2010 WL 5834046, at *3 (D.Minn. 2010); *Smith v. Under Armour, Inc.*, 593 F.Supp.2d 1281, 1288 (S.D.Fla.2008); *Narson v. Godaddy.com, Inc.*, 2008 WL 2790211, at *5 (D.Ariz.2008). Indeed, Defendant cites no court decisions to the contrary. This Court finds the reasoning of the Ninth and Seventh Circuits persuasive for two primary reasons.[4]

First, the regulatory goal of FACTA—preventing identity theft by reducing the public exposure of private information—supports this reading. As the Seventh Circuit explained, it is reasonable to read § 1681c(g)(1) as focused only those receipts provided *at* a retail location, because those are the receipts that "may be dropped, mislaid, or discarded by the consumer in any number of public places where it easily can be retrieved and put to nefarious use by others." 615 F.3d at 802–03. The Court further notes that where physical receipts are provided at a brick and mortar store, there is a risk that someone looking over the customer's shoulder can glean information that might be employed for nefarious purposes. By contrast, receipts that are delivered to a private residence in a sealed envelope are less likely to be spied upon, retrieved, or "put to nefarious use by others" because they are protected by the courier and obscured by an envelope until secured by the recipient.[5] Thus, interpreting § 1681c(g)(1) as excluding mailed receipts aligns with the evil that FACTA was intended to address—*i.e.* the proliferation of paper receipts, bearing private information, inattentively transferred in public locations.

Second, a separate provision of FACTA supports this limited construction of § 1681c(g)(1). As the Seventh Circuit also explained in *Shlahtichman:*

> In subsection 1681c(g)(3), Congress specified two different effective dates for the truncation requirement: December 4, 2006, 'with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005,' and December 4, 2004 with respect to any such machine or device 'that is first put into use on or after January 1, 2005.' The citation of

---

cific moment in time: *At this point, we are ready to proceed.*").

3. *Id.*

4. The Court notes that, while the construction of "point of the sale or transaction" provided by the majority of courts is persuasive, reliance on the term of art "point of sale" may be problematic. It is true that "point of sale" refers to the physical point of a sale—such as at a cash register. *See The Dictionary of Retailing*, 171, Fairchild Publications (1985). However, the *precise* term "point of sale" does not directly appear in the statute. 15 U.S.C. § 1681c(g)(1) ("... any receipt provid-

ed to the cardholder at the point of *the* sale or transaction."). To be sure, Congress may have intended to employ or refer to that term, but judging by the syntax of the statutory language, it is not clear this is what Congress specifically intended.

5. While a personal mailbox might be invaded for the purposes of identity theft, this potential threat seems outside the scope of FACTA. In short, it is hard to imagine that Congress intended to mandate the omission of credit card numbers on receipts that are delivered alongside, and with the same level of security, as credit card statements themselves.

the cash register as the lead example of a machine or device used to electronically print a receipt is consistent with the notion that Congress meant to regulate the types of receipts that document in-person transactions between the consumer and the merchant; few terms bring to mind a store better than "cash register."

615 F.3d at 800.

Applying this location-based reading of the statute here, Plaintiff's allegations fail to state a claim under § 1681c(g)(1). Plaintiff alleges that the receipt she received from Defendant was mailed to her after she made her online purchase. Compl. ¶ 9. Thus, Plaintiff's alleged receipt was not provided to her at the location of her purchase—or "at the point of the sale or transaction"—and is not regulated by FACTA. Accordingly, the Court **GRANTS** Defendant's motion to dismiss.

## C. Willfulness

Section 1681n sets forth the liability arising for willful violations of FACTA, including § 1681c(g)(1). Section 1681n provides, in relevant portion:

Any person who **willfully** fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, whichever is greater; ...

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court ...

15 U.S.C. § 1681n (emphasis added). This liability provision creates a "willfulness" requirement for all claims for statutory and punitive damages. *Shlahtichman*, 615 F.3d at 803. This willfulness requirement is not satisfied unless a defendant's violation of a statute was reckless or knowing. *Id.* However, if a defendant that violated FACTA was abiding by its own "objectively reasonable" reading of the statute, then the defendant did not willfully violate it. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69–70 & n. 20, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) ("To the extent that they argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound."). A motion to dismiss a claim exclusively seeking punitive or statutory damages under § 1681c(g)(1) of FACTA is properly granted if willfulness is not adequately pleaded, or a defendant's reading of the statute is objectively reasonable. *See Shlahtichman*, 615 F.3d at 803.

Here, Plaintiff seeks only statutory and punitive damages. Hence, to survive a motion to dismiss Plaintiff must show that Defendant's violations of FACTA were willful. *Id.* Defendant argues that Plaintiff cannot make this showing because it was abiding by its objectively reasonable reading of the statute; that no truncation is required in mailed receipts. According to Defendant, the Ninth Circuit's endorsement of its reading of FACTA in the dicta of *Simonoff*—as well as a number of other federal courts agreement—indicates the objective reasonableness of its interpretation.

Defendant is correct. As discussed above, numerous federal courts have indicated that Defendant's reading of the statute was not just reasonable, but proper. *See Simonoff*, 643 F.3d at 1210 (9th Cir. 2011) ("Point of sale" is a term of art that

applies to "face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt."); *Shlahtichman*, 615 F.3d at 800 ("This language [of Section 1681c(g)(1)] has a ready application to face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt."); *Holt*, 2010 WL 5834046, at *3 ("the language 'receipt provided to the cardholder at the point of the sale or transaction,' brings to mind the passing of a paper receipt between buyer and seller at a store location.") (citation omitted); *Under Armour, Inc.*, 593 F.Supp.2d at 1288 ("transactions involving paper receipts in 'brick and mortar' establishments must comply with FACTA's mandate."); *Narson*, 2008 WL 2790211, at *5 ("This language clearly contemplates a transaction where the customer is present in the location where the sale is made, and where the merchant provides the receipt to the customer at that location."). A defendant's reading of the statute that aligns with a substantial body of case law (as here) is objectively reasonable. *Kivo*, 982 F.Supp.2d at 225 (emphasizing that a defendant's interpretation of FACTA need not be correct to be objectively reasonable).

In response, Plaintiff argues that Defendant did not abide by an objectively reasonable reading of FACTA, because it does not properly truncate *any* of its receipts, including those provided to putative class members at the box office. Thus, according to Plaintiff, Defendant was not abiding FACTA at all, and its willful violation at the box office should be imputed to its postal-based violations as well.

Plaintiff's argument is problematic for two reasons. First, Plaintiff's FACTA claim is predicated on a mailed receipt, not one supplied at the box office. Absent injury from a cognizable claim, Plaintiff has not established she has standing to assert the claim of another party (one who received the physical receipt at the box office).

Second, Plaintiff does not cite any authority for the proposition that a defendant's willfulness is imputed from one alleged violation of FACTA to another. Thus, even if the allegations were sufficient to show that Defendant willfully violated FACTA in other instances (*e.g.* where receipts were provided at the physical point of sale) as to other customers, Plaintiff has not established any legal basis for imputing such willfulness to different conduct directed at this customer which did not violate the statute. As no class has been certified, the only claim currently before this Court is that of the Plaintiff, and it is Plaintiff's individual claim on which the parameters of willfulness must be measured.

Accordingly, Plaintiff has failed to sufficiently allege willfulness on the part of the Defendant. That failure is an independent and sufficient ground for dismissal of Plaintiff's claim for punitive and statutory damages. Hence, the Court **GRANTS** Defendant's motion on this ground as well.

This order disposes of Docket No. 14. The Clerk is instructed to enter judgment and close the file.

IT IS SO ORDERED.