# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1895
_____

Mary G. Yang

*Plaintiff - Appellee*

v.

Farmers New World Life Insurance Company

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: June 14, 2018
Filed: August 3, 2018
_____

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.
_____

ARNOLD, Circuit Judge.

In May, 2003, Minnesota resident May Yang applied to Farmers New World Life Insurance Company for a life-insurance policy it sold only to people under age sixty. In her application, Yang said she was born on July 11, 1943, and was thus fifty-nine years old, providing a Laotian birth certificate as proof. Farmers issued her the policy later that month under a contract containing the two provisions at issue in this

appeal. One provision states that Farmers "will not contest this policy after it has been in force for two years . . . except for nonpayment of premiums." The other provides that "[i]f the insured's age or sex was misstated, the amount payable will be that which the premiums paid would have purchased at the correct age or sex."

In 2014, Mary Yang ("Mary," to avoid confusion with the insured) filed a claim with Farmers for the policy's $150,000 death benefit, asserting that she was Yang's beneficiary and submitting as proof of Yang's demise a Laotian death certificate that, like the birth certificate, stated that Yang was born in July, 1943. But when Farmers verified Yang's social-security number, it learned the Social Security Administration had a much earlier birth date for her (May 27, 1933), which would have made her almost seventy years old when she applied for the policy and thus ineligible for it. Invoking the policy's misstatement-of-age clause, Farmers refused to award Mary the death benefit, but instead refunded Yang's premiums with interest.

Mary sued Farmers in Minnesota state court, claiming that Farmers violated its contract with Yang when it declined to award Mary the death benefit. She alleged that Yang gave Farmers her real birth date in applying for the policy and, if she did not, Farmers could not "rescind" the policy due to her misstatement of age. After Farmers removed the case to federal district court, both parties moved for summary judgment. In her motion, Mary argued that Yang was erroneously assigned May 27, 1933, as her birth date when she immigrated to the United States and that her birth date was actually July 11, 1943. In its cross-motion, Farmers argued Yang's birth date was May 27, 1933, since that date appears not only on all of her federal and state identification documents (including her passport, certificate of naturalization, and Minnesota ID), but also on her application to a different life-insurance company for a different policy. Farmers also questioned the authenticity and reliability of the Laotian documents that stated that Yang was born in 1943: When the beneficiary of her other policy applied for its benefit, she submitted a *different* Laotian death certificate that reported that Yang was eighty-one years old in 2014, placing the year of her birth in or around

-2-

1933. The parties also disputed whether the incontestability provision in Yang's policy precluded Farmers from even invoking the misstatement-of-age clause.

Acknowledging that neither party had "focused" its arguments on the policy's incontestability provision, the district court granted summary judgment to Mary and denied it to Farmers on the ground that that provision barred Farmers from enforcing the misstatement-of-age clause. The district court reasoned that if Farmers could adjust Yang's age upwards by ten years under the misstatement clause, the policy's death benefit would be reduced to zero since she would be ineligible for it; and so, by invoking the misstatement clause, the district court held, "Farmers is effectively challenging the validity of the Policy due to a misstatement in the application[,] . . . a type of challenge the incontestability provision is designed to prohibit." The district court did not identify the relief it was granting Mary, but we assume that its judgment required Farmers to award her the policy's $150,000 benefit. Farmers appeals from that judgment, and we reverse in part.

Farmers asserts that the district court should have granted it summary judgment rather than Mary. The parties agree that Minnesota law applies to this diversity action for breach of an insurance contract. We review the district court's summary-judgment decision, including its interpretation of the contract and state law, de novo. *See Welspun Pipes, Inc. v. Liberty Mut. Fire Ins. Co.*, 891 F.3d 351, 353 (8th Cir. 2018); *HIP, Inc. v. Hormel Foods Corp.*, 888 F.3d 334, 338 (8th Cir. 2018).

Although Minnesota law requires every life-insurance policy issued in the state to provide that it will be incontestable after two years, *see* Minn. Stat. § 61A.03(1)(c), and that the "amount payable" under it "will be the amount the premium would have purchased at the [insured's] correct age" if her age has been "understated," *see id.* § 61A.03(1)(e), it appears that the Minnesota Supreme Court has not yet decided how those provisions interact. We are not, however, without guidance from that court on the matter. Because insurance policies are contracts, they are interpreted using general

principles of contract law. *Linn v. BCBSM, Inc.*, 905 N.W.2d 497, 504 (Minn. 2018). It is a "basic rule" of contract law "that courts must interpret a contract so as to give effect to all of its provisions." *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn. 2009). A policy will therefore not be construed in a manner that "entirely neutralizes one provision . . . if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent" as reflected in the policy as a whole. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013). We conclude that the district court erred when it interpreted the incontestability and misstatement clauses in Yang's policy in a way that resulted in the former wholly neutralizing the latter.

Since Farmers does not dispute the district court's ruling that Yang's policy was incontestable, we assume that Farmers could no longer contest it. The question then is whether Farmers contested the policy when it applied the policy's misstatement-of-age clause to adjust the death benefit to zero dollars. But to state the question is to answer it: Since the adjustment based on Yang's alleged misstatement of age occurred under a term of her policy setting what "the amount payable will be," the adjustment did not contest the policy, it enforced it. Nothing in the policy indicates that the clause applies only where the policy is contestable or its adjustment reduces but does not eliminate the benefit. The language of the clause is unambiguous about its scope. It applies, without apparent exception, whenever the insured's age was misstated.

Because the plain language of the misstatement-of-age clause admits of no exception, we may not "rewrite, modify, or limit its effect by a strained construction." *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016). It is irrelevant that adjusting the policy's benefits under the clause may result in their complete elimination. So long as the elimination occurs pursuant to the policy's terms, it "is not a contest of the validity of the insurance contract but instead is a recognition of its terms." 29-178 Appleman on Insurance Law & Practice § 178.03[C][4] (2d ed. 2011).

The district court erred in holding that the misstatement clause does not apply where, as here, it might (or would) reduce the benefits of an incontestable policy to zero.

Mary observes nonetheless that when Farmers decided that Yang was ineligible for her policy, it did not simply adjust the benefits under her policy's misstatement-of-age clause, it eliminated them. "If that is not a 'contest' of a policy," she asserts, "nothing is." It appears that the district court, in granting summary judgment to Mary, accepted a version of this argument, reasoning that since the age adjustment Farmers advocated would take Yang "outside the scope of [her] policy altogether," the adjustment was "effectively challenging" the policy instead of applying it. The difficulty with that reasoning is that it is results-oriented. The test of whether an act contests a policy is not the outcome it produces, but whether it reaches that outcome by seeking to cancel the policy or to enforce it. *See Yang v. Western-Southern Life Assur. Co.*, 713 F.3d 429, 435 (8th Cir. 2013).

The district court relied primarily on *Amica Life Insurance Co. v. Barbor*, 488 F. Supp. 2d 750 (N.D. Ill. 2007), for its holding. In *Amica*, the court, applying Illinois law, did not dispute that normally "the application of an age adjustment provision is not a contest of the policy within an incontestability provision." *Id.* at 759. The *Amica* court ruled, however, that an age adjustment becomes a contest when it would not merely diminish the policy's benefits, but "void them altogether." *Id.* Whatever the merits of that ruling may be as a matter of Illinois law, it is wrong under Minnesota law since the misstatement-of-age provision here—like the one in *Amica*, *see id.* at 753 n.2—admits of no distinctions based on the amount of benefits payable, if any, following the age adjustment. *See Storms, Inc.*, 883 N.W.2d at 776. If it so happened that an age adjustment could count as a contest of the policy, Minnesota law would still require us to enforce it as an exception to the more general incontestability provision. *See Bank Midwest v. Lipetzky*, 674 N.W.2d 176, 181 n.8 (Minn. 2004); *see also Kersten v. Minn. Mut. Life Ins. Co.*, 608 N.W.2d 869, 873 (Minn. 2000).

Mary also contends that Yang's representation of her age in the life-insurance application is "valid and binding upon" Farmers under Minn. Stat. § 61A.11. But that statute applies only if Yang's representation was not "willfully false or intentionally misleading" and also if Farmers issued her the policy "without previous medical examination." *See* Minn. Stat. § 61A.11. We cannot say on this record that § 61A.11 applies here as a matter of law: Farmers asserts that it examined Yang in conjunction with issuing her policy, and a factfinder could reasonably infer that if she misstated her birth year by a full decade on an application for insurance that she was otherwise ineligible for, she was being willfully false or intentionally misleading.

Mary contends as well that we should deem "the entirety of the misstatement provision" in Yang's policy "void" since it covers misstatements of both age and sex, whereas Minnesota law requires it to cover only misstatements of age. *See* Minn. Stat. § 61A.03(1)(e). This argument is spurious. Misstatements of sex are not at issue here. Mary does not explain why parties to a policy, who may "contract as they desire," *see Pepper v. State Farm Mut. Auto. Ins. Co.*, 813 N.W.2d 921, 927 (Minn. 2012), may not agree to a misstatement-of-sex provision. In any event, even if the misstatement clause here conflicted with a statutory mandate, Minnesota law would not void it, but sever its offending part so that it would provide "the level of coverage provided for in the statute." *See Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 305 (Minn. 2010). There is no reason why Farmers may not enforce the clause.

Although the plain language of the policy decides this case, we observe that the district court's imposition of a limitation on the misstatement-of-age clause would lead to perverse consequences. For example, if age adjustments were enforced under a policy until they completely eliminated the payment of benefits, a beneficiary would receive increasingly reduced benefits as the insured's misstatements of age became more severe; but once the misstatement became so egregious that the beneficiary should receive no benefits, the limitation would force the insurer to award her full benefits instead. Under that rule, people seeking to defraud an insurer by understating

the age of the insured would have a powerful incentive to direct the insured to buy a policy she is ineligible for at her age. Nothing requires us to introduce that kind of asymmetry into the life-insurance market.

In holding that the policy's incontestability provision does not preclude an age adjustment that eliminates the payment of benefits, we express no opinion on whether the adjustment Farmers advocates would actually result in an elimination. The district court assumed that it would since the age adjustment would make Yang ineligible for her policy, but the misstatement-of-age clause provides only that "the amount payable will be that which the premiums paid would have purchased at the correct age." The district court might have been correct to assume that the amount payable post-adjustment would be the benefits due under the insured's policy and premiums at her age if she was eligible for the policy. But it is not apparent from the language of the clause, which appears to derive from the statutory requirement set forth in Minn. Stat. § 61A.03(1)(e), that the amount payable is limited to the benefits available under the policy the insured actually purchased if she was ineligible for it at her age. We leave this matter to the district court to resolve, if it becomes necessary, on remand.

Farmers maintains that the district court also erred in denying it summary judgment on the ground that the record showed as a matter of law that Yang was born in 1933. The record, however, was hardly univocal on that score. Although Farmers recognizes that Mary presented "evidence . . . supporting the 1943 birth year," it asserts that her evidence was "clearly contradicted" by its own, which included, it further asserts, admissions by Yang that she was born in 1933. But the fact that Yang apparently sometimes said she was born in 1933 does not resolve the dispute over her birth date, it creates it. The district court therefore correctly held that "the conflicting evidence in this case prohibits summary judgment" as to Yang's date of birth.

We affirm the district court's denial of summary judgment to Farmers, but reverse its grant of summary judgment to Mary Yang and remand the case for further proceedings.

_____