# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2496
_____

Smart Communications Collier Inc.

*Plaintiff - Appellant*

v.

Pope County Sheriff's Office; Shane Jones

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: April 14, 2021
Filed: July 20, 2021
_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

Smart Communications Collier, Inc., ("Smart") and Pope County ("County") had a contract dispute. Smart sued the County in federal district court.[1] The County moved to dismiss the case based on a forum-selection clause in the contract. The

_____

[1]The Honorable D.P. Marshall Jr., Chief Judge, United States District Court for the Eastern District of Arkansas.

district court agreed with the County's interpretation of the clause and dismissed the case. Smart appeals. We affirm the district court.

## I. *Background*

In 2016, the County contracted with Smart to provide an electronic messaging system for inmates at the Pope County Detention Center. The contract included a forum-selection clause and an anti-removal provision:

> The parties mutually agree that any litigation arising hereunder shall be brought and completed in Pope County, Arkansas and other pertinent Arkansas courts and further that neither party shall seek to remove such litigation from Circuit Courts or Appellate Courts of the State of Arkansas by application of conflict of laws or any other removal process to any Federal Court or court not in Arkansas.

Appellant's Addendum at 10.

About four years later, a dispute about the messaging system arose between the parties. The County sued Smart in the Circuit Court of Pope County, Arkansas. Then, Smart sued the County in federal district court in the Eastern District of Arkansas. The County moved to dismiss Smart's case based on the contract's forum-selection clause. The district court determined that the clause precluded Smart from suing the County in federal court and dismissed the case. Smart appeals the district court's dismissal.

## II. *Discussion*

We review the district court's interpretation of a forum-selection clause de novo. *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003). Both parties urge that

Arkansas law applies to the interpretation of this forum-selection clause, so we will apply Arkansas law here.[2]

"When the parties express their intention in a contract in clear and unambiguous language, we must construe the written agreement according to its plain meaning." *Jorja Trading, Inc. v. Willis*, 598 S.W.3d 1, 7 (Ark. 2020). And when the

---

[2]Normally, state law applies to interpretations of contracts in diversity actions. *In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d 851, 858 (8th Cir. 2010). Some of our sister circuits apply this general principle to the interpretation of forum-selection clauses, while others apply federal common law. *Compare Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017) ("find[ing] no reason . . . to apply federal common law to interpret . . . forum selection clauses"), *and Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016) (explaining that "[w]hen the interpretation of a forum-selection clause is at issue in a diversity case, . . . the forum state's choice-of-law rules . . . determine what substantive law governs" (internal quotation marks omitted)), *and Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014) (explaining that interpretation of a forum-selection clause is a substantive question to which state law applies), *with Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) ("We apply federal contract law to interpret the scope of a forum-selection clause even in diversity actions . . . ."). We have not explicitly addressed the issue.

In the past, we have expressly declined to decide "whether to apply state or federal law in determining the enforceability of" a forum-selection clause. *See, e.g.*, *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006). Although the enforceability and interpretation of forum-selection clauses are distinct concepts, *see Martinez*, 740 F.3d at 217 ("distinguish[ing] between the *interpretation* of a forum selection clause and the *enforceability* of the clause"), we similarly decline to take a side on the issue of what law applies to the interpretation of a forum-selection clause. "[B]oth parties operate under the assumption that [Arkansas] law controls," *Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003), "and neither party argues that the application of one or another body of law would materially affect the outcome," *Servewell Plumbing*, 439 F.3d at 789, so we will apply Arkansas law in this case.

plain meaning permits "only one reasonable interpretation," Arkansas courts "will give effect to the plain language of the policy without resorting to rules of construction." *Curley v. Old Reliable Cas. Co.*, 155 S.W.3d 711, 713 (Ark. Ct. App. 2004). Citing this blackletter law, Smart points to the forum-selection clause's language that requires suits to "be brought and completed in Pope County, Arkansas and other pertinent Arkansas courts." According to Smart, the Eastern District of Arkansas is an "other pertinent Arkansas court[]" because the clause's text refers to a geographical limitation (i.e., a court physically located within Arkansas's borders), not a jurisdictional limitation (i.e., a court belonging to the Arkansas state government). Smart urges this textual distinction based on a single word: "in."

Smart points to *Simonoff v. Expedia, Inc.* where a forum-selection clause required the parties to litigate in the "courts in King County, Washington." 643 F.3d 1202, 1205 (9th Cir. 2011). The Ninth Circuit reasoned that

> [t]he word "in" means to "'express[] relation of presence, existence, situation, inclusion . . . ; inclosed or surround by limits, as in a room.'" . . . *Black's Law Dictionary 758* (6th ed. 1990) . . . . Hence the phrase "courts in" a state includes any court within the physical boundaries of the state, even if the court does not derive its power and authority from the sovereignty of the state.

*Id.* at 1206 (second and third alteration in original). It concluded "that a forum selection clause that specifies 'courts of' a state limits jurisdiction to state courts, but specification of 'courts in' a state includes both state and federal courts." *Id.* Several other circuits have adopted a similar hard-line distinction between the prepositions *in* and *of. See FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010); *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926 (10th Cir. 2005); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (per curiam). We find Smart's "argument too [smart] by half," *Nichols v.*

-4-

*United States*, 136 S. Ct. 1113, 1118–19 (2016), because each of the forum-selection clauses in those cases materially differ from the clause here.

The forum-selection clauses construed by other circuits have limited venue to "courts in [location]" or "courts of [location]."[3] In those clauses, the location is used as a noun. This clause, in the beginning, follows the same pattern, requiring suit to "be brought and completed in Pope County, Arkansas." But there is no federal courthouse in Pope County, so this offers little help to Smart.

The relevant portion of the forum-selection clause diverges from the language in the clauses that other circuits have addressed. It provides for venue "in . . . other pertinent Arkansas courts." Here, "Arkansas" is used as an adjective, not a noun. Usually, an adjective before a court connotes what government it belongs to—e.g., federal court, state court, United States Supreme Court, Arkansas Supreme Court. Both this court and Arkansas state courts have used this "[location] courts" construction to refer to jurisdiction. *See, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (stating that "Arkansas courts" apply the same standard of causation as federal courts); *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 108 (Ark. 2005) (interpreting a forum-selection clause and stating that the parties "selected the jurisdiction of the Florida courts"). The same is true here. The ordinary understanding of "Arkansas courts" refers to courts that are constituted under the Arkansas state government, not any court that happens to be within Arkansas's borders.

Further, the word "pertinent" does not alter the meaning of "Arkansas courts," as Smart suggests. Emphasizing "pertinent," Smart contends that "other pertinent

---

[3]*See Simonoff*, 643 F.3d at 1205 ("courts in King County"); *FindWhere Holdings*, 626 F.3d at 754 ("courts of the State of Virginia"); *Am. Soda*, 428 F.3d at 924 ("Courts of the State of Colorado"); *Dixon*, 330 F.3d at 398 ("Courts of Texas").

Arkansas courts" are courts that "ha[ve] jurisdiction over" litigation arising within the geographical boundaries of Pope County. Appellant's Br. at 13. But "pertinent" does not affect the ordinary meaning of "Arkansas courts." The word *pertinent* means "[c]learly related to a matter at hand." *Pertinent*, *American Heritage Dictionary of the English Language* (5th ed. 2011); *see also Pertinent*, *Black's Law Dictionary* (10th ed. 2014) (defining *pertinent* as "[o]f, relating to, or involving the particular issue at hand; relevant"). Thus, its function is to connect a word or phrase to related matter, not to change the meaning of the word or phrase. Here, the parties agreed to bring and complete "any litigation arising [under the contract] . . . in Pope County, Arkansas and other pertinent Arkansas courts." So "pertinent" could connect "other . . . Arkansas courts" to either the litigation or the courts in Pope County. Either way, "Arkansas courts" still means just that.

Next, to overcome the forum-selection clause's ordinary meaning, Smart notes that the contract's anti-removal provision refers to specific Arkansas courts, identifying the "Circuit Courts or Appellate Courts of the State of Arkansas." It thus argues that because the parties named specific courts in the anti-removal provision and used the term "Arkansas courts" in the forum-selection clause, the parties must have intended for those terms to mean different things. "But there is no 'canon of interpretation that forbids interpreting different words . . . to mean roughly the same thing.' We decline to invent and apply such a canon here." *Jennings v. Rodriguez*, 138 S. Ct. 830, 845 (2018) (citation omitted). This is especially true because the forum-selection clause permits "only one reasonable interpretation," and in such cases we will not "resort[] to rules of construction," whether real or not. *Curley*, 155 S.W.3d at 713.

Finally, Smart appeals to the construction rule disfavoring surplusage, arguing that the contract's anti-removal provision would be surplusage if the forum-selection clause requires the parties to begin and end litigation in Arkansas courts. *See Carter v. Four Seasons Funding Corp.*, 97 S.W.3d 387, 401 (Ark. 2003) ("In construing a

contract, the courts must endeavor to give meaning and effect to every word . . . ." (quoting *Pickens-Bond Constr. Co. v. N. Little Rock Elec. Co.*, 459 S.W.2d 549, 552 (Ark. 1970) (alteration in original))). We have previously held that "a clear and unequivocal forum selection clause" waives parties' rights to removal. *Medtronic Sofamor Danek, Inc. v. Gannon*, 913 F.3d 704, 709 (8th Cir. 2019). Because this forum-selection clause is clear, Smart's argument has facial appeal. But both the forum-selection clause *and* the anti-removal provision in this contract are clear; thus, the rule against surplusage has limited, if any, interpretational value. *See Curley*, 155 S.W.3d at 713. Further, the "canons [of interpretation] are not mandatory rules. They are guides that 'need not be conclusive.'" *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (quoting *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)). In fact, applying the surplusage cannon is inappropriate if it would make the plain text ambiguous; courts "should prefer the plain meaning since that approach respects the words of" the contracting parties. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004). Here, the ordinary meaning of the forum-selection clause and the anti-removal provision obviate the need to resort to the rule against surplusage.

### III. *Conclusion*

Accordingly, we affirm the district court.

_____