# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-3224

_____

Fort Worth Partners, LLC

*Plaintiff - Appellee*

v.

Nilfisk, Inc.; Nilfisk Holding A/S, a Danish Corporation

*Defendants - Appellants*

_____

No. 24-3281

_____

Fort Worth Partners, LLC

*Plaintiff - Appellant*

v.

Nilfisk, Inc.; Nilfisk Holding A/S, a Danish Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: September 17, 2025
Filed: October 17, 2025

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Fort Worth Partners, LLC sued Nilfisk, Inc. and its parent company Nilfisk Holding A/S for breach of contract relating to Nilfisk's insurance obligations under the parties' lease agreement. The parties filed cross-motions for summary judgment. The district court denied Nilfisk's motion, granted Fort Worth Partners' motion in part, and held a bench trial on damages. Nilfisk appeals the district court's denial of its motion for summary judgment and the damages award. Fort Worth Partners cross-appeals the district court's damages award. We affirm, with the exception of the damages award pertaining to unrebutted costs, which we reverse and remand to the district court to make factual findings supporting its award.

I.      BACKGROUND

A.      The Building and its Destruction

Nilfisk leased a warehouse-style building located in Springdale, Arkansas, from Fort Worth Partners under the terms of an Industrial Building Lease (the "Lease"). The warehouse was a 200,000 square foot building comprised of two connected 100,000 square foot structures—an East Building and a West Building joined by abutting gable walls (together, the "Building"). In total, the Building stretched 1,000 feet east-to-west and 200 feet north-to-south. The Building was constructed of pre-engineered steel framing, with moment frames running north-to-south and cable cross bracing running east-to-west. Each moment frame attached to the foundation's perimeter with steel plates and threaded anchor bolts at twenty-five-foot increments.

The Building's foundation consisted of a perimeter wall set into the ground and a concrete slab floor. Concrete pedestals extended from the foundation's

underlying spread footings to support load-bearing interior columns. In the West Building, the moment frames were supported by three I-beam columns attached to the foundation's footing pedestals by steel plates and anchor bolts. In the East Building, the moment frames were supported by hollow steel beams set into the foundation itself.

On March 30, 2022, a tornado destroyed the Building. All 100,000 square feet of the West Building and approximately 40,000 square feet of the East Building collapsed. The wall panels and roof of the remaining portion of the East Building were damaged beyond repair, but the interior moment framing and roof supports remained largely undamaged. The East Building's foundation also suffered damage, including sheared base plates and anchor bolts, a cracked floor slab, and spalled concrete along the foundation's perimeter.[1] Given the extent of the damage, Nilfisk vacated the building on August 1, 2022, prior to the expiration of the Lease.

B.     Nilfisk's Property Insurance Obligation and Coverage

Under the terms of the Lease, Nilfisk was responsible for all property-related expenses, including taxes, insurance, maintenance, and repairs. Section 10.2 of the Lease required Nilfisk to maintain property insurance covering the full replacement cost of the Building in the event of physical loss or damage:

> **10.2. Coverage Amounts.** Tenant shall purchase and maintain, throughout the Term, a Tenant's Policy(ies) of (i) "all-risk" commercial property insurance covering the improvements constructed, installed or located on the Premises (but excluding Tenant's Property) against all loss or damage caused by fire, ice, hurricane, windstorm and such other risks of physical loss or damage as are covered by a causes of loss special form insurance policy, which coverage shall, at all times, be in an amount equal to one hundred percent (100%) of the then "full replacement cost" of the Premises subject to a deductible not to exceed

---

[1] Spalling occurs when flakes, chips, or chunks of concrete have broken off a larger concrete base.

One Hundred Thousand and No/100 Dollars ($100,000.00) ("Full Replacement Cost" shall be interpreted to mean the cost of replacing the Premises without deduction for depreciation or wear and tear, less the cost of footings, foundations and other structures below grade).

The Lease also provided Fort Worth Partners with a remedy if Nilfisk failed to obtain adequate property insurance:

> **10.1. Tenant's Policies**. . . . In the event that Tenant fails, at any time or from time to time, to comply with the requirements of the preceding sentence, Landlord may after not less than five (5) days prior written notice: order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant to Landlord upon demand, as Additional Rent.

Alternatively, Fort Worth Partners could terminate Nilfisk's tenancy and recover "any . . . amount necessary to compensate . . . for all the detriment directly caused by [Nilfisk's] failure to perform its obligations."

Neither Fort Worth Partners nor Nilfisk attempted to determine the full replacement cost of the Building, though the Building's appraised value ranged between $10.5 and $11.1 million. Nilfisk's insurance coverage varied from year to year, but Nilfisk never carried more than $10 million in full replacement cost coverage. At the time the tornado destroyed the Building, Nilfisk carried only $5,149,999.00 in full replacement cost property insurance.

Fort Worth Partners received certificates of insurance from Nilfisk each year showing the amount of coverage Nilfisk carried but never expressed concern about Nilfisk's coverage. Fort Worth Partners was aware of its right under Section 10.2 of the Lease to purchase additional full replacement cost coverage and charge the cost of the insurance to Nilfisk but did not exercise that right.

## C.    Proceedings Below

Fort Worth Partners sued Nilfisk for breach of contract, seeking to recover the full replacement cost of the Building it would have received had Nilfisk been adequately insured. During discovery, both parties retained expert witnesses to estimate the full replacement cost of the Building. Fort Worth Partners' expert, Kevin McMahon, estimated the replacement cost at $27,722,974.03. Nilfisk's expert, Jeff Marcussen, estimated the replacement cost at $14,253,579.00. Nilfisk's insurer also retained an appraiser who estimated the replacement cost at $9,428,939.87.

Fort Worth Partners argued Nilfisk breached the Lease as a matter of law by failing to carry adequate insurance coverage. Nilfisk asserted Fort Worth Partners' claim: (1) was barred by the statute of limitations and Arkansas' doctrine of avoidable consequences; (2) was premised on an unenforceable agreement to agree; and (3) sought excessive damages.

The district court granted Fort Worth Partners' motion in part. The court found that even under the lowest contested replacement cost submitted by Nilfisk's insurer, Nilfisk's coverage still fell below the requirements of Section 10.2. The district court concluded Nilfisk had breached its insurance obligation and was liable to Fort Worth Partners for damages arising out of the breach. But because the parties' experts disagreed on the Building's replacement cost, the court declined to determine the replacement cost at summary judgment and proceeded to a bench trial on the issue of damages.[2]

The district court denied Nilfisk's motion in its entirety. As to the statute of limitations issue, the court found that Fort Worth Partners' suit was timely because each of Nilfisk's violations of its insurance obligation constituted a separate breach

---

[2]The district court awarded Fort Worth Partners damages for unpaid rent at summary judgment. Neither party appeals that portion of the award.

of the Lease. The court also declined to apply the doctrine of avoidable consequences at the summary judgment stage due to the existence of fact questions. The court also rejected Nilfisk's argument that the insurance provision was an unenforceable agreement to agree and found the damages Fort Worth Partners sought were not excessive.

At trial, the district court heard testimony on the replacement cost of the Building from both parties' experts. The court considered the conflicting expert testimony and issued written findings of fact on the full replacement cost. Specifically, the district court determined the full replacement cost of the Building net of Nilfisk's insurance proceeds was $12,870,528.74.[3] This cost included $732,000.00 for demolishing the remainder of the Building, $7,138,611.89 for rebuilding the metal superstructure, $2,982,112.75 for electrical wiring, $1,651,177.82 in overhead costs and lost profits, and $5,659,053.60 in costs identified by McMahon that Nilfisk did not rebut. The court also found that the cost of repairing the foundation was $1,303,123.00, but concluded those damages were not recoverable because the Lease precluded Fort Worth Partners from recovering for damage to any portion of the Building's foundation and footings.

During trial, Nilfisk failed to offer any evidence in support of its argument that the doctrine of avoidable consequences barred Fort Worth Partners' recovery of damages. Rather than present evidence to support its claims on the doctrine, Nilfisk asserted in its post-trial brief that it "adopt[ed] and incorporate[d] by reference the arguments and authorities set forth in its Motion for Summary Judgment and Brief in Support." The district court summarily rejected this argument, stating "Nilfisk did not present evidence on or re-urge the issue at trial." The court denied the request to apply the doctrine of avoidable consequences "for the reason stated in the Court's summary judgment order."

---

[3]Nilfisk paid $5,292,427.32 in insurance proceeds to Fort Worth Partners that the district court deducted from its calculation of replacement cost damages.

After trial, Fort Worth Partners sought to recover $170,413.50 in attorney's fees and $19,059.65 in costs. The court reduced Fort Worth Partners' fees to $152,115.00 to bring the fees in line with the prevailing rates in Northwestern Arkansas. The court then applied a 25 percent reduction to account for Fort Worth Partners' limited success on its damages theory and awarded $114,086.25 in attorney's fees. The court also awarded $5,149.15 in costs.

Both parties appeal the district court's judgment.

## II. DISCUSSION

We first review Nilfisk's arguments and then consider Fort Worth Partners' cross-appeal.

### A. Nilfisk's Appeal

Nilfisk raises three issues on appeal: (1) the statute of limitations bars Fort Worth Partners' claim because its cause of action accrued when Nilfisk first provided it with a deficient certificate of insurance in 2016; (2) the doctrine of avoidable consequences bars Fort Worth Partners from recovering damages because Fort Worth Partners did not take reasonable steps to avoid harm; and (3) the district court's award for unrebutted costs is not supported by the evidence.

#### 1. Statute of Limitations

Nilfisk argues the statute of limitations bars Fort Worth Partners' suit because the statutory period began to accrue in 2016 when Nilfisk first procured a deficient insurance policy. Fort Worth Partners counters that each time Nilfisk renewed the policy and presented a new deficient certificate of insurance, it committed a new and discrete breach of the Lease with its own separate statutory period of limitation. We review the district court's denial of Nilfisk's motion for summary judgment on the

statute of limitations *de novo*. Yang v. Farmers New World Life Ins. Co., 898 F.3d 825, 827 (8th Cir. 2018).

In Arkansas, the statute of limitations to enforce obligations under written agreements is five years. Ark. Code Ann. § 16-56-111(a). "[A] cause of action for breach of contract accrues 'when the plaintiff could have first maintained the action to a successful conclusion.'" Pennington v. BHP Billiton Petroleum (Fayetteville), LLC, 631 S.W.3d 555, 557 (Ark. 2021) (quoting Dupree v. Twin City Bank, 777 S.W.2d 856, 858 (Ark. 1989)). In Pennington, the Arkansas Supreme Court determined that plaintiffs are not barred from bringing breach of contract lawsuits for alleged breaches that occur within the statute of limitations period because other similar breaches may have occurred outside the limitations period. Id. at 556-57.

The record reflects that Nilfisk procured multiple separate one-year policies. Each year, Nilfisk obtained a policy bearing a different policy number and for a different coverage amount. And in 2019, Nilfisk changed insurance providers entirely. While Nilfisk is correct that the statutory period has expired for the policy it procured in 2016, the statutory period has not expired for the policy it obtained in 2021. Fort Worth Partners could not have "maintained [an] action to a successful conclusion" based on Nilfisk's deficient 2021 policy until Nilfisk actually obtained and presented that policy. Pennington, 631 S.W.3d at 557. Fort Worth Partners' cause of action accrued in April 2021 when the operative policy was obtained. Because Fort Worth Partners sued within five years of Nilfisk obtaining the policy in place at the time the tornado destroyed the Building, Fort Worth Partners' suit was timely.

### 2. Doctrine of Avoidable Consequences

Nilfisk asserts the doctrine of avoidable consequences bars Fort Worth Partners from recovering damages because Fort Worth Partners could have avoided harm if it had exercised its right to purchase additional insurance on the Building. Fort Worth Partners counters that Nilfisk waived this argument by failing to raise it

at trial and, even if the argument was preserved, the doctrine of avoidable consequences does not apply. We review the district court's denial of Nilfisk's motion for summary judgment on the doctrine of avoidable consequences *de novo*. Yang, 898 F.3d at 827.

Generally, "a denial of summary judgment is interlocutory in nature and not appealable after trial and judgment." N.Y. Marine & Gen. Ins. Co. v. Continental Cement Co., LLC, 761 F.3d 830, 837 (8th Cir. 2014). Instead, a denial of a summary judgment motion in a bench trial is redressed "through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied." Id. at 838. That said, if a motion for summary judgment raises purely legal issues, it is reviewable on appeal even if the arguments were not revisited during trial. Dupree v. Younger, 598 U.S. 729, 735-36 (2023).

Application of the doctrine of avoidable consequences in this case does not present the type of purely legal issue reviewable on appeal from a denial of summary judgment. Under Arkansas's doctrine of avoidable consequences, "a party cannot recover damages resulting from consequences that he or she could have reasonably avoided by reasonable care, effort, or expenditure." Greenway Equip., Inc. v. Johnson, 602 S.W.3d 142, 149 (Ark. Ct. App. 2020). "One is required only to take such steps as may be taken at small expense or with reasonable exertion." Taylor v. George, 212 S.W.3d 17, 24 (Ark. Ct. App. 2005). "[W]hether one acted reasonably in minimizing, mitigating, or avoiding damages is a question of fact." Id. As the party seeking application of the doctrine, Nilfisk bore the burden of proving that Fort Worth Partners could have reasonably avoided the harmful consequences. Hobson v. Hobson, 715 S.W.3d 890, 903 (Ark. Ct. App. 2025).

At summary judgment, Nilfisk argued the doctrine bars Fort Worth Partners from recovering because it could have purchased additional insurance and charged the premiums to Nilfisk as additional rent but instead chose to sit on its rights until it was harmed. The district court found factual disputes over the reasonableness of requiring Fort Worth Partners to purchase additional insurance and the amount of

harm it might have avoided. Given these factual disputes, the court denied Nilfisk's motion for summary judgment but specifically left application of the doctrine open for further factual development at trial.

At trial, Nilfisk did not address the doctrine of avoidable consequences. Instead, it waited until its post-trial brief to raise the issue and, even then, only "adopt[ed] and incorporate[d] by reference the arguments and authorities set forth in its Motion for Summary Judgment and Brief in Support." Nilfisk did not specifically introduce any evidence to meet its burden of proving how Fort Worth Partners might have avoided its damages and the reasonableness of doing so, nor did it argue what evidence existed in the record to support its claims that had not been fully considered by the district court at summary judgment.

To review the district court's denial of summary judgment after Nilfisk's failure to offer evidence at trial would "circumscribe[] the discretion of the district court to 'deny summary judgment in a case where there is a reason to believe that the better course would be to proceed to a full trial.'" Metro. Life Ins. Co. v. Golden Triangle, 121 F.3d 351, 356 (8th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Under these circumstances, we decline to review the district court's denial of Nilfisk's motion for summary judgment on the doctrine of avoidable consequences.

### 3. Unrebutted Costs Award

Nilfisk contends the district court's unrebutted costs award is not supported by the record because Marcussen rebutted each of the damages categories calculated by McMahon. Fort Worth Partners concedes that the unrebutted costs award is not supported by the record, but it contends the award should be higher. We review the district court's damages calculation—a factual finding—for clear error. Lesch v. United States, 612 F.3d 975, 982 (8th Cir. 2010). "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left

with the definite and firm conviction that an error was made." <u>Kingman v. Dillard's, Inc.</u>, 721 F.3d 613, 616 (8th Cir. 2013).

A district court's calculation of damages should "set forth its reasoning with enough clarity that the appellate court may understand the basis of the decision." <u>IPSCO Tubulars, Inc. v. Ajax TOCCO Magnathermic Corp.</u>, 779 F.3d 744, 751 (8th Cir. 2015). While a court does not have to provide "a line-by-line accounting," <u>see</u> <u>Lesch</u>, 612 F.3d at 983, it must make sufficient factual findings to support the award, <u>IPSCO Tubulars</u>, 779 F.3d at 751. General references to expert reports are not sufficient factual findings to justify a damages award. <u>Stephenson v. El-Batrawi</u>, 524 F.3d 907, 916-17 (8th Cir. 2008). A court should "state the basis upon which each category of damages was calculated [and] refer to any specific portions of the experts' reports" that assisted in its calculation. <u>Id.</u> at 917.

When calculating Forth Worth Partners' damages for the full replacement cost of the building's metal superstructure and electrical installation, the district court made substantial factual findings after thoroughly reviewing and weighing conflicting expert testimony. But when awarding unrebutted costs, the district court's analysis is limited to one paragraph in its 47-page order generally referencing "the remaining line items in Mr. McMahon's estimate" without elaboration. Moreover, the unrebutted costs award accounts for more than 40 percent of the total damages award. Such a substantial damages award should be supported by "clear, specific, and complete" factual findings that "refer[] to testimony [the court] deem[s] credible" and support the court's calculation of damages. <u>IPSCO Tubulars</u>, 779 F.3d at 751. Because the district court's calculations are not explained in a way that allows us to fully review whether the award is supported by substantial evidence in the record, we reverse that portion of the damages award and remand it to the district court for further elucidation.

## B.    Fort Worth Partners' Cross-Appeal

Fort Worth Partners raises three additional arguments on cross-appeal: (1) the district court incorrectly interpreted the Lease as excluding all damages to the Building's foundation from the full replacement cost calculation; (2) the district court incorrectly interpreted the Lease as permitting a repair remedy for damage to the foundation instead of a replacement remedy; and (3) the district court abused its discretion by reducing its attorney's fees award based on Fort Worth Partners' limited success on its claims.

### 1.    Availability of Damages for Foundation

Fort Worth Partners contends it is entitled to recover damages for the portions of the Building's foundation that sit above grade because the clause in Section 10.2 "less the cost of footings, foundations and other structures below grade" excludes only the below-grade portions of the foundation from the full replacement cost calculation. Nilfisk contends Section 10.2 excludes the entirety of the foundation, whether above or below grade, barring Fort Worth Partners' recovery of any damages for the foundation.

We review the district court's interpretation of the Lease *de novo*. Pac. Life Ins. Co. v. Blevins, 92 F.4th 734, 737 (8th Cir. 2024). "The first rule of interpreting a contract is to give the language employed the meaning that the parties intended, and the court must consider the sense and meanings of the words used by the parties as they are taken and understood in their plain, ordinary meaning." S. Constr., LLC v. Horton, 609 S.W.3d 16, 26 (Ark. Ct. App. 2020).

We begin by interpreting the word "grade" in the clause "less the cost of footings, foundations and other structures below grade." Because the Lease uses "grade" in the context of the construction and engineering terms "footings" and "foundation," we give "grade" the meaning it ordinarily has in the construction and engineering industry. Les-Bil, Inc. v. Gen. Waterworks, Corp., 511 S.W.2d 166,

169-70 (Ark. 1974) ("[W]ords of art or words connected with or peculiar to a particular trade, profession or occupation are to be given the signification attached to them by experts in such art or trade, profession or occupation.").

The district court looked to the definition of "grade" as used in the International Building Code ("IBC"). The IBC defines "Grade Plane" as "the average of finished ground level adjoining the building at exterior walls." 2021 Int'l Bldg. Code § 202 (Sept. 2021).[4] This definition has support in A Dictionary of Construction, Surveying and Civil Engineering. There, "grade" is defined as "[t]he flat formation level of a building from which all building works commence." Grade, A Dictionary of Construction, Surveying and Civil Engineering 232 (2d ed. 2020). "Formation level" is further defined as "[t]he finished level of the ground before concreting takes place." Formation Level, A Dictionary of Construction, Surveying and Civil Engineering 214 (2d ed. 2020). Applying these definitions to the Lease, we agree with the district court that "grade" as used in Section 10.2 means "ground level." See also Grade, Merriam-Webster Dictionary ("[T]he contemplated level of the ground when the work of erecting a building is completed : ground level[.]").[5]

Having determined that "grade" as used in Section 10.2 means "ground level," we must next determine whether "footings" and "foundations" are above or below grade (*i.e.,* above or below ground level). A building's foundation is generally defined as the "base" of a building and can include both above and below ground components. See Foundation, Merriam-Webster Dictionary ("[T]he whole masonry substructure of a building[.]")[6]; Foundation, American Heritage Dictionary of the English Language ("A wall or other structure, as of concrete or masonry, usually extending below ground level and forming the base upon which a building rests.").[7]

_____

    [4]https://codes.iccsafe.org/content/IBC2021P2/chapter-2-definitions#IBC20-21P2_Ch02_Sec202.
    [5]https://unabridged.merriam-webster.com/unabridged/grade.
    [6]https://unabridged.merriam-webster.com/unabridged/foundation.
    [7]https://ahdictionary.com/word/search.html?q=foundation.

Footings are part of a foundation that help distribute the load of a building into the ground. See Footing, Merriam-Webster Dictionary ("[T]he part of a structure that is in contact with the soil or rock foundation[.]")[8]; Footing, Oxford English Dictionary ("A projecting course at the base of a wall or other structure that acts as a reinforced foundation; the reinforced base or foundation of an upright structure.").[9] Like foundations, footings may include some above and below ground components.

Because footings and foundations can contain both above and below grade components, we must determine whether Fort Worth Partners is entitled to recover for the above grade (i.e., above ground) components. Fort Worth Partners contends "other structures below grade" in Section 10.2 modifies "footings" and "foundations" so that only their below grade components are excluded from the full replacement cost. In contrast, Nilfisk asserts that "other structures below grade" is independent of "footings" and "foundations" so that the Lease excludes all footings and foundations, whether above or below grade, and any other structures that are below grade.

Nilfisk's interpretation is more persuasive. Fort Worth Partners' own expert testified that determining exactly how much of the foundation and footings are above grade would require thousands of dollars of testing—testing Fort Worth Partners has not conducted. Even if the Court could determine how much of the Building's foundation is above grade, Fort Worth Partners' approach would have the Court cut the foundation in half at ground level and award damages for only part of a singular foundation. Such an approach is unreasonable.

Nilfisk's approach, instead, excludes the entirety of the foundation and footings, whether above or below grade, and any other structures below grade from the damages Fort Worth Partners is entitled to recover. This approach is reasonable

---

[8] https://unabridged.merriam-webster.com/unabridged/footings.
[9] https://www.oed.com/dictionary/footing_n.

and consistent with the plain meaning of the Lease. See Smart Comms. Collier Inc. v. Pope Cnty. Sheriff's Office, 5 F.4th 895, 897 (8th Cir. 2021) ("[W]hen the plain meaning permits only one reasonable interpretation, Arkansas courts will give effect to the plain language . . . without resorting to rules of construction." (internal quotations omitted)).

Because Nilfisk's interpretation of the Lease is the only reasonable interpretation, we hold "less the cost of footings, foundations and other structures below grade" excludes all footings and foundations, whether above or below grade, from the damages Fort Worth Partners is entitled to receive. The district court did not err when it determined the availability of damages under the Lease for the foundation.[10]

### 2. Attorney's Fees

Fort Worth Partners contends the district court abused its discretion when it reduced the attorney's fees award because Fort Worth Partners achieved only limited success on its claims. Fee awards are not required to be proportionate to damages awards, but if a party achieves only partial or limited success on its claim, a reduction in fees may be appropriate to ensure the award is not excessive. Marshall v. Anderson Excavating & Wrecking Co., 8 F.4th 700, 713 (8th Cir. 2021).

Here, the district court determined a fee reduction was necessary to account for Fort Worth Partners' limited success on its damages claim. The court noted that while Fort Worth Partners successfully proved liability and many of its damages theories, it ultimately proved only half of the damages it initially sought. The district court determined a 25 percent reduction in fees was appropriate to avoid an excessive award. This reduction was within the court's discretion. If, on remand, the district

---

[10]Because we conclude that Fort Worth Partners is not entitled to recover any damages for the Building's foundation, we do not reach the question of whether the district court selected the proper measure of damages for the foundation under the Lease.

court revises its damages award, the parties can request reconsideration of the court's attorney's fees award.

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of partial summary judgment in favor of Fort Worth Partners and its denial of Nilfisk's motion for summary judgment.  We affirm the district court's damages award for the Building's metal superstructure, electrical wiring, foundation, and attorney's fees. We reverse the district court's damages award for unrebutted costs, and remand for further proceedings consistent with this opinion.

_____